## BOOTH *et al. v.* LLOYD *et al.*

*(Circuit Court, D. Maryland.* May 6, 1887.)

1. COURTS — FEDERAL JURISDICTION — FEDERAL QUESTION — SUFFICIENCY OF PLEADING.
    Plaintiffs alleged that their property had been seized under color of a state law, which was alleged to be void as against the federal constitution. *Held,* on demurrer, that a federal question was sufficiently presented without formally alleging that the circumstances of the arrest were such as to call forth the operation of the state law.

2. CONSTITUTIONAL LAW — PRIVILEGES OF CITIZENS — MARYLAND OYSTER LAWS.
    The Maryland act of 1884, *c.* 518, prohibits the use of vessels to buy oysters on the Chesapeake bay unless a license is obtained from the state therefor, conditioned upon a twelve-months residence in the state, and the payment of a tonnage fee. *Held* unconstitutional, as denying citizens of other states privileges enjoyed by those of Maryland.

3. SAME — IMPOSITION OF TONNAGE TAX — MARYLAND OYSTER LAWS.
    The law is also void as imposing a tonnage duty.

4. TRESPASS — BY OFFICERS — AUTHORITY OF UNCONSTITUTIONAL LAW.
    In order to make a member of the Maryland board of public works liable for a trespass committed by an officer of the state fishery force, under color of authority of an unconstitutional state law, it must be directly shown that the officer acted under directions of said board, and that such member concurred therein.

5. DAMAGES — TRESPASS BY OFFICERS — UNCONSTITUTIONAL LAW.
    Where a vessel is seized and detained by officers acting under an unconstitutional state law, supposed by them to be valid, the damages, in the absence of harshness or rigor in the seizure, will be confined to the actual value of the cargo lost, and the additional expense for the crew, etc., caused by the detention.

The state of Maryland, by an act of her general assembly, passed at the January session, 1884, *c.* 518, provided that no person should employ any vessel to carry, buy, or sell oysters on the waters of the Chesapeake bay and its tributaries, without first having obtained a license so to do from the state; and also that no one should obtain such license unless he had been a citizen and resident of the state for 12 months immediately preceding the application for license, and until he had paid the sum of three dollars to the state for every ton the vessel might measure. The plaintiff firm consisted of Alfred Booth and William V. Booth, who are citizens of Illinois, and Alfred E. Booth, who is a citizen of Maryland, and are largely engaged in canning oysters in Baltimore for the markets of the world. They send barges down the Chesapeake, towed by tugs, the tugs being licensed and enrolled vessels of the United States, from their canneries in Baltimore, to the oyster grounds, where their agents purchase oysters, load the barges with them, and they are then towed back to the canneries. In this way oysters are collected for their business. They applied for licenses for their vessels to carry, buy, and sell oysters, but were refused, on the ground that they were not all of them citizens of Maryland. Under the advice of counsel they proceeded with their business, and two of their barges, loaded with oysters, were seized by the state fishery force, and their captains arrested and held to bail by a justice of the peace, on the charge of carrying oysters without having

first obtained a license, as aforesaid, required by law. The officers of the state fishery force are appointed by the board of public works, and are, under its control and direction, charged by the law with the execution of the oyster license law of the state. The plaintiffs, therefore, brought this suit against Henry Lloyd, governor, J. Frank Turner, comptroller, and John S. Gittings, treasurer, of the state of Maryland, who constitute the board of public works, and against James J. Waddell, commander of the state fishery force, and Lemuel Smoot, captain of one of the vessels of that force, who, in fact, arrested and seized plaintiffs' servants and vessels. Capt. Waddell died pending the suit, so that it was impossible to prove by him that the board of public works had given him the order which he transmitted to Smoot, to arrest all persons and seize all vessels carrying, buying, and selling oysters without a license. Smoot made the arrest and seizure in obedience to the orders of his chief, Waddell.

The plaintiffs, in their declaration, charged that their servants and vessels had been arrested and seized by the defendants, acting under color of the above-recited act of the general assembly of Maryland, which act was contrary to the constitution of the United States, and void, and they were, therefore, deprived of their rights under the constitution, contrary to the laws and constitution of the United States. To this declaration the defendants filed their plea to the jurisdiction, showing that one of the plaintiffs and all the defendants were citizens of the state of Maryland, and that, therefore, the court was without jurisdiction to try the cause. To this plea plaintiffs demurred, and the demurrer was sustained. The plaintiffs then filed an amended declaration, to which defendants plead—*First*, not guilty; *second*, not guilty, and justification under the authority of the Maryland act of 1884, *c.* 518. To the first plea issue was joined. On the first part of the second plea issue was joined, and as to the justification under the Maryland act of 1884, *c.* 518, they replied that the vessels were not lawfully seized by Smoot, because the act was contrary to the constitution of the United States, and void, and could give him no authority to seize the same. To this replication defendants demurred, and the court overruled the demurrer.

The only question of law remaining to be decided on the issues drawn by the pleadings was as to the liability of executive officers of government for acts done under color of and in obedience to unconstitutional and void laws. The case was submitted to the court, BOND and MORRIS, JJ., without a jury.

*Johnson & Johnson*, for plaintiffs:

An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed. *Norton* v. *Shelby Co.*, 118 U. S. 442, 6 Sup. Ct. Rep. 1121. The case of *Osborn* v. *Bank*, 9 Wheat. 738, was argued by Henry Clay, Daniel Webster, John Sergeant, Robert Goodloe Harper, Silas Wright, Hammond, and Brown. "The counsel for the appellants," say the court through MARSHALL, C. J., "are too intelligent, and have too much self-respect, to pretend that a void act can afford any protection to the officers who execute it. They expressly admit that it cannot." Id. 868. The state of Ohio passed a law to tax the bank of the United States

operating in that state. The auditor of the state of Ohio, by his deputy, seized $100,000 in specie and bank notes belonging to the bank to pay this tax, and delivered it to Curry, the treasurer of Ohio, who, in time, transferred it to Sullivan, his successor as treasurer. The bank filed its bill against Ortman, his deputy, and the treasurer, to enjoin them from paying that money away and to compel them to return it to the bank. Says the Chief Justice, page 839: "The appellants expressly waive the extravagant proposition that a void act can afford protection to the person who executes it, and admits the liability of the defendants to the plaintiff to the extent of the injury sustained, in an action at law." The commanding officer is responsible for arrests made under illegal orders. *McCall* v. *McDowell*, 1 Abb. U. S. 212; Cooley, Torts, 293, and cases, 688; 2 Dill. Mun. Corp. § 974, p. 977; *Barnes* v. *District of Columbia*, 91 U. S. 540; *Harmony* v. *Mitchell*, 1 Blatchf. 549, affirmed, 13 How. 115; *Stacy* v. *Emery*, 97 U. S. 642; *Kilbourn* v. *Thompson*, 103 U. S. 168; *Livingston* v. *Jefferson*, 1 Brock. 212; *State* v. *Chase*, 5 Ohio St. 529; *Green* v. *Munford*, 5 R. I. 472. The governor of Texas was enjoined from executing a void law. *Davis* v. *Gray*, 16 Wall. 203. The treasurer of a state enjoined from executing a void law. *Osborn* v. *Bank*, 9 Wheat. 738; *U. S.* v. *Peters*, 5 Cranch, 115. This suit is not the first one in Maryland against an officer for levying an illegal tax. In 1772 an action for trespass was brought against the sheriff of Charles county for levying the poll-tax on tobacco for support of the parsons. Counsel for plaintiff, B. Johnson, T. Johnson, Thomas Stone, and S. Chase. Verdict for full amount claimed, £60. In the *Arlington Case*, (*U. S.* v. *Lee*,) 106 U. S. 196, 1 Sup. Ct. Rep. 240, the court, by Mr. Justice MILLER, say: "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it. It is the only supreme power in our government, and every man who, by accepting office, participates in its functions, is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives. Courts of justice are established properly to decide upon the controverted rights of the citizens as against each other, but also upon rights in controversy between them and the government, and the docket of the court is crowded with authorities of the latter class. Shall it be said, in the face of all this, and of the acknowledged right of the judiciary to decide, in proper cases, statutes which have been passed by both branches of congress, and approved by the president, to be unconstitutional, that the courts cannot give a remedy when the citizen has been deprived of his property by force, his estate seized and converted to the use of the government without lawful authority, without process of law, and without compensation, because the president has ordered it, and his officers are in possession? If such be the law of this country it sanctions a tyranny which has no existence in the monarchies of Europe, nor in any other government which has a just claim to well-regulated liberty, and the protection of personal right." In *Marye* v. *Parsons*, 114 U. S. 335, 5 Sup. Ct. Rep. 932, 962, WAITE, C. J., MILLER, BRADLEY, and GRAY, JJ., while dissenting from the particular point involved in that particular discussion, say: "But then it will be asked, has the citizen no redress against the unconstitutional acts or laws of the State? Certainly he has; there is no difficulty upon the subject. Whenever his life, liberty, or property is threatened, assailed, or invaded by unconstitutional acts, or by an attempt to execute unconstitutional laws, he may defend himself in every proper way,—by *habeas corpus*, by defense to prosecutions, by actions brought on his own behalf, by injunction, by *mandamus*. Any one of these modes of redress suitable to his case is open to him. A citizen cannot in any way be harassed, injured, or destroyed by unconstitutional laws, with-

out having some legal means of resistance or redress." For such a trespass by high officers of the government, acting in open defiance of the decision of this court, the plaintiffs are entitled to punitive damages. "The dignity and value of the right assailed, and the power and authority of the source from which the assault proceeds, are elements to be considered in the computation of damages, if they are to be not only compensated for the direct loss inflicted, but a remedy and prevention for the greater wrong and injury of its repetition." *Huckle* v. *Money*, 2 Wils. 205, approved in *Barry* v. *Edmunds*, 116 U. S. 550, 6 Sup. Ct. Rep. 501. See, also, *Beardmore* v. *Carrington*, 2 Wils. 244, cited in *Barry* v. *Edmunds*, where Lord CAMDEN held that £1,000 damages was not excessive for an arrest under an illegal warrant issued by Lord Halifax, secretary of state, upon which arrest the plaintiff was imprisoned six days. In this case the state fishery force was under the orders and control of the board of public works; acting under those orders, an officer of the force made this arrest of the servants and seizure of the property of plaintiffs. The board either ordered this seizure to be made, or knew that orders were in existence requiring such seizures to be made. It did not countermand them. It had full notice of the unconstitutionality of the act under which those orders were issued. It retained in its service the subordinate who made the illegal arrest and seizure, and it thus ratified his act, and is responsible for his trespass. The board of public works either ordered the arrest to be made, or approved of it after it was made, and, in either case, it is liable in exemplary damages.

*Chas. B. Roberts*, Atty. Gen. of Md., and *C. J. M. Gwinn*, for defendants.

### ON DEMURRER TO PLEA.

BOND and MORRIS, JJ. The defendants contend that the plaintiffs' demurrer to their plea to the amended declaration should be overruled, because they say that the declaration does not state a case within the jurisdiction of this court as between citizens of the same state. The declaration avers a trespass by the defendants, acting as state officers, claiming, for their justification in so acting, a state law which the declaration avers is void, because repugnant to the federal constitution. The defendants contend that these averments do not state a case raising that constitutional question, unless the plaintiffs further aver that the circumstances under which the trespass was committed were really such that the state law came into operation, and would have been a protection to the defendants if a valid law.

We are unable to see the force of this contention. The averments of the declaration clearly state a case in which the state officers claimed for their authority to do what would otherwise be a wanton trespass the protection of a state statute, and aver that the statute so relied upon is repugnant to the federal constitution, and therefore void. That constitutional question, therefore, lies at the threshold of the case stated by the plaintiff, and gives jurisdiction under the first section of the act of March 3, 1875. If it should appear at any time during the progress of the cause that the defendants did not claim to act under the authority of the state law, or that the constitutional validity of that law is not really drawn in question, the court will have power to dismiss the suit as one not involving a controversy within its jurisdiction. The demurrer is sustained.

ON DEMURRER TO REPLICATION.

BOND and MORRIS, JJ. To the amended declaration of the plaintiffs, filed October 2, 1886, the defendants have filed two pleas,—the first is not guilty, and the second is not guilty as to the arrest of the plaintiffs' barges loaded with oysters, and the destruction of the oysters; and as to the residue of the alleged trespasses, the defendants say that the barges and oysters were lawfully seized by Lemuel Smoot, commanding the sloop Katie Hinds, of the state fishery force of the state of Maryland, for the buying and selling of oysters in said barges without having obtained a license as required by act of Maryland of 1884, *c.* 518. To the pleas of not guilty the plaintiffs have joined issue, and as to the residue of the second plea, setting up the Maryland act of 1884, in justification of the seizure of plaintiffs' barges and oysters, the plaintiffs reply that their barges and oysters were not lawfully seized by Smoot, because the act of 1884 is not valid under the constitution of the United States. To this replication of the plaintiffs to the residue of the defendants' second plea the defendants have demurred.

The avowed object of the defendants in filing this demurrer is to call to the attention of the court the alleged insufficiency of the declaration, which defendants claim is the first error in pleading, and which declaration they contend is insufficient, because it does not allege that the plaintiffs had obtained a license to buy or sell oysters in Maryland, contending that so much of the Maryland act of 1884, *c.* 518, as requires a license for buying or selling oysters, is separable from the requirement of a license to carry oysters, and is not affected by the objections which may apply to the requirement of a license to carry oysters over the navigable waters in Maryland. We do not so think; and it seems to us that the state law requiring a license to buy and sell oysters must be held invalid, so far as it affects the plaintiffs, because it forbids the granting of a license to any person who has not been a resident of Maryland for 12 consecutive months preceding his application for such license. The validity of the requirement with regard to catching oysters is not drawn in question in this suit.

The contention of the defendants that the plaintiffs were required to take out a license before dealing in oysters in this state is based upon the concession that oysters, after they are caught, are merchandise, just as corn is merchandise. The plaintiffs' declaration avers that they were buying oysters which had been already lawfully caught. They aver also, in the fourth count of the declaration, that they had applied for a license, but had been refused because of want of the required residence in Maryland. The law invoked as the justification of the seizure is, in our opinion, unconstitutional, because it denies to citizens of other states privileges and immunities granted to citizens of Maryland, in a matter to which that clause of the federal constitution is applicable. A state cannot discriminate, by tax or license, between the goods or merchandise of home manufacture as against those produced in other states.

*Welton* v. *Missouri*, 91 U. S. 275; *Tiernan* v. *Rinker*, 102 U. S. 123; *Webber* v. *Virginia*, 103 U. S. 345. Nor can a state impose a tax or license upon a non-resident trader different from that imposed upon a citizen or resident trader. *Ward* v. *Maryland*, 12 Wall. 418. We are also of opinion that this requirement of the law is void as a duty of tonnage. The act of 1884 requires that there shall be paid for every vessel engaged in buying or selling oysters upon the waters of the Chesapeake and its tributaries in Maryland a license of three dollars per ton of the vessel's measurement. This, is a tax levied upon the vessel as an instrument used in a particular trade or branch of commerce, irrespective of the value of the vessel as property, and based solely and exclusively on its cubical contents. We entertain no doubt that this is a tonnage tax, within the ruling of the supreme court in *Tax Case*, 12 Wall. 217; *Steam-Ship Co.* v. *Port-Wardens*, 6 Wall. 31; *Peete* v. *Morgan*, 19 Wall. 581; *Cannon* v. *New Orleans*, 20 Wall. 577.

The defendants' demurrer to the plaintiffs' replication to the residue of defendants' second plea is overruled.

<hr/>

### ON TRIAL ON MERITS.

Bond and Morris, JJ. This is an action of trespass, brought by the plaintiffs against the defendants, who constitute the board of public works of the state of Maryland, and Lemuel Smoot, who commanded a vessel in the employ of the board of public works. The facts are that, while the plaintiffs were engaged on board their own vessels in buying, selling, and carrying oysters on the navigable waters of the state, the defendant Smoot seized their vessels, took their captains into custody, and detained them until they gave bail to answer a charge of violating certain statutes of the state, known as the "Oyster License Law." The detention of the captains of the plaintiffs' vessels was of such a length of time that the oysters on board were spoiled. The law under which the vessels were seized, and the captains held to bail, has been decided to be unconstitutional. The question now is as to the liability of the parties in this action, and the extent of it, which questions are submitted to the court, without the intervention of a jury.

The first difficulty that arises in the way of the plaintiffs recovering against the members of the board of public works is that they have offered no proof that they ever ordered the arrest and seizure of the plaintiffs' captains and vessels. While it may be admitted that an unconstitutional statute will offer no protection to the officer who acts under it, it is nevertheless necessary to show that he advised, directed, aided, and abetted the conduct which constitutes the cause of action. So far as this case is concerned, there is no such proof. It is left to inference, merely, that because the officer who made the seizure was an officer of the state under the control of the board of public works that therefore they directed him to make the seizure. It is not shown that the board of public works ever considered the matter, or how many of them united in a resolution to direct the captain, Smoot, to make the seizure. Surely the members of

the board who voted against it are not liable, and without proof we cannot infer that all or any one consented.

Smoot, clearly, is guilty of a trespass. He took and detained the plaintiffs' property without warrant of law. He supposed he had the authority and warrant of law, but he was mistaken; and the next question is, what is the measure of damages? The plaintiffs seek exemplary damages, but we do not think that they are entitled to such damages. There was nothing vindictive, harsh, violent, or even rude in the manner of the seizure and arrest. It was made, if we may say so, with urbanity, and while it occasioned the plaintiffs loss, it did no injury to their feelings, however sensitive. We think the true measure of damages is the actual value at the place of seizure of the cargo of oysters lost, the expenses paid by the plaintiffs to their crews, and tug, which they would not have had to pay had the seizure not been made, the intention being to make the plaintiffs entirely whole, and nothing more. We find for the defendants, except the defendant Smoot. As to him, we find for plaintiffs, and assess their damages at $700.