## CHALKER, ADMINISTRATOR DE BONIS NON OF ESTATE OF WRIGHT, ET AL. *v.* BIRMINGHAM & NORTHWESTERN RAILWAY COMPANY ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 283. Argued March 25, 26, 1919.—Decided April 21, 1919.

A state law making the amount of annual tax for the privilege of doing railroad construction work depend on whether the person taxed has his chief office in the State, viz., $25.00 if he has and $100.00 if

he has not—discriminates against citizens of other States, in violation of Art. IV, § 2, of the Constitution.  P. 526.

And a citizen of another State who would be liable for the larger tax, if valid, may question its validity without first tendering the lower tax.   P. 528.

138 Tennessee, 145, reversed.

THE case is stated in the opinion.

 Mr. *C. E. Pigford,* with whom *Mr. Watson E. Coleman* and *Mr. W. N. Key* were on the brief, for plaintiffs in error.

Mr. *R. F. Spragins,* with whom *Mr. Joseph W. Cox* and *Mr. W. H. Biggs* were on the briefs, for defendants in error.

The act applies alike to residents and nonresidents; to citizens of Tennessee as well as to citizens of other States.   To argue that few non-resident persons, firms or corporations have their chief offices in Tennessee, or that few resident in Tennessee have their chief offices elsewhere, does not prove discrimination.   It is a fact of common knowledge that many have their chief offices in States other than the States in which they reside or are domiciled.

If it is competent for the legislature to exempt from the payment of a privilege tax merchants having their manufacturing plants where goods are offered for sale located within the State, and yet impose the tax on those merchants who have their places of manufacture in another State (*Armour & Co.* v. *Virginia,* 246 U. S. 1,) manifestly it was competent for the legislature, for a stronger reason, to make the distinction made in this statute treating all alike under the same circumstances.   *Reymann Brewing Co.* v. *Brister,* 179 U. S. 445.

The statute can be sustained as a tax measure, and also under the police power as regulating a business.   It

is within the legislative power of classification, because
the distinction made is based on substantial reasons.

The business of constructing railroads and other like
public works is peculiar. Ordinarily, such construction
concerns have and should have the chief office, or a chief
office, at or near the work of construction. Usually such
contracts involve large sums, and many laborers and sub-
contractors are employed on the work. Generally the
common labor employed consists of foreigners. The State
and the public have an interest in the proper performance
of such work, as the public service is involved, and the
right of eminent domain is given. It may be deemed
important to the proper performance of such work that
the chief office be located at or near it. As indicated in
the case at bar, the complainant neglected his work and
breached his contract, as found by the jury, and his bill
shows that he failed to settle with his sub-contractors.
Those undertaking such contracts frequently fail and
become bankrupt. In practically all such cases, the
rights and claims of laborers, sub-contractors and material-
men are vitally affected, and it is important that they
have a remedy by suit and a personal judgment as well
as by attachment and garnishment, which they probably
would not have except when the chief office of the prin-
cipal contractor is within the State.

The State is further justified in making the distinction
for the reason that the concern having a chief office
within the State would likely be liable for and pay *ad
valorem* taxes as well as the privilege tax; it would likely
have funds, contracts, securities and other property within
the State at its chief office subject to state taxation;
it would, under the laws of Tennessee, be subject to suit
and service of process and personal judgment in the State,
which would not be the case if there were no chief office
there; and it would be subject to garnishment in the State
as to sums due to sub-contractors and laborers, and would

have there its books of account and other documents and papers within the jurisdiction of the state courts, and subject to subpœna, duces tecum.   Furthermore, it is more difficult to collect the privilege tax from those having their chief office out of the State. [Among the cases cited were: *Leim* v. *McCall*, 239 U. S. 175; *McPherson* v. *Blacker*, 146 U. S. 1; *Central Lumber Co.* v. *South Dakota*, 226 U. S. 157; *Hayes* v. *Missouri*, 120 U. S. 68; *Bell's Gap R. R. Co.* v. *Pennsylvannia*, 134 U. S. 232; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 293; *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 76; *Toyota* v. *Hawaii*, 226 U. S. 190; *Bradley* v. *Richmond*, 227 U. S. 477; *Cargill Co.* v. *Minnesota*, 180 U. S. 452; *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114.]

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

The point for determination is the liability of J. W. Wright, Jr., a citizen and resident of Alabama with his chief office therein, who engaged in the business of constructing a railroad in Tennessee, for the tax prescribed by § 4 of "An Act to provide revenue for the State of Tennessee and the counties and municipalities thereof," approved May 1, 1909 (Acts of Tenn., 1909, c. 479, pp. 1726, 1727, 1735) which provides:

"Sec. 4. Be it further enacted, That each vocation, occupation, and business hereinafter named in this section is hereby declared to be a privilege, and the rate of taxation on such privilege shall be as hereinafter fixed, which privilege tax shall be paid to the County Court Clerk as provided by law for the collection of revenue.

\*        \*        \*        \*        \*        \*        \*        \*

"Each foreign construction company, with its chief office outside of this State, operating or doing business

in this State, directly or by agent, or by any subletting contract, each, per annum, in each county . . . $100.00

· "Each domestic construction company and each foreign construction company, having its chief office in this State, doing business in this State, each, per annum, in each county . . . . . . . . . . . . . . . . . . . $25.00.

"The above tax shall be paid by persons, firms, or corporations engaged in the business of constructing bridges, waterworks, railroads, street-paving construction work, or other structures of a public nature."

Replying to the claim that the statute in effect discriminates against citizens of other States, the Supreme Court of Tennessee, 138 Tennessee, 145, 152, 153, said: "The determining feature in the legislation quoted is the having of one's chief office in this State. Any citizen of this State, as well as any citizen of a foreign State, who has his chief office out of the State, must pay the $100 tax; so of any domestic corporation, as well as foreign corporation, having its chief office out of the State. Any foreign corporation or citizen of another State, or firm, as well as domestic corporations, citizens of this State, and firms of this State having its or their chief office in this State, are all alike entitled to carry on a railroad construction business here on the payment of $25. There is no discrimination at all."

With this conclusion we are unable to agree. Accepting the construction placed upon it by the Supreme Court, we think the quoted section does discriminate between citizens of Tennessee and those of other States by imposing a higher charge on the latter than it does on the former, contrary to § 2, Art. IV of the Federal Constitution—"The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

The power of a State to make reasonable and natural classifications for purposes of taxation is clear and not questioned; but neither under form of classification nor

otherwise can any State enforce taxing laws which in their practical operation materially abridge or impair the equality of commercial privileges secured by the Federal Constitution to citizens of the several States.

"Excise taxes, it is everywhere conceded, may be imposed by the States, if not in any sense discriminating; but it should not be forgotten that the people of the several States live under one common Constitution, which was ordained to establish justice, and which, with the laws of Congress, and the treaties made by the proper authority, is the supreme law of the land; and that that supreme law requires equality of burden, and forbids discrimination in State taxation when the power is applied to the citizens of the other States. Inequality of burden, as well as the want of uniformity in commercial regulations, was one of the grievances of the citizens under the Confederation; and the new Constitution was adopted, among other things, to remedy those defects in the prior system." *Ward* v. *Maryland*, 12 Wall. 418, 431; *Guy* v. *Baltimore*, 100 U. S. 434, 439; *Blake* v. *McClung*, 172 U. S. 239, 254; *Darnell & Son. Co.* v. *Memphis*, 208 U. S. 113, 121.

As the chief office of an individual is commonly in the State of which he is a citizen, Tennessee citizens engaged in constructing railroads in that State will ordinarily have their chief offices therein, while citizens of other States so engaged will not. Practically, therefore, the statute under consideration would produce discrimination against citizens of other States by imposing higher charges against them than citizens of Tennessee are required to pay. We can find no adequate basis for taxing individuals according to the location of their chief offices—the classification, we think, is arbitrary and unreasonable. Under the Federal Constitution a citizen of one State is guaranteed the right to enjoy in all other States equality of commercial privileges with their citizens; but he cannot have his chief office in every one of them.

It is insisted that no tender of any sum for license tax was made in time, and therefore plaintiffs in error cannot question the validity of the enactment because of discrimination. But the Supreme Court expressly declared that the statute fixed the liability of Wright at one hundred dollars. A tender of less would have availed nothing and it was therefore unnecessary.

The judgment of the court below is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*