FRANK A. WIMBUSH, JOHN H. WIMBUSH, MAUD K. LINBERG and THOMAS A. WIMBUSH v. FANNIE DANFORD, NELSON R. WIMBUSH, Appellants, and EDWARD KAMMERER, Trustee of the Certain Seven Legatees Mentioned in the Last Will of John Wimbush, Defendant.

Division One, March 14, 1922.

1. **PRACTICE IN SUPREME COURT**: Incomplete Abstract of Record: Motion to Dismiss: Waiver. Where respondent files a motion in the Supreme Court to dismiss the appeal for failure of appellant to file a correct abstract of record and also files a supplementary abstract supplying what he deems essential parts of the record alleged to have been omitted, he will be held to have waived his motion to dismiss the appeal.

2. **HUSBAND AND WIFE**: Estate by Entirety. A warranty deed in the usual form conveying land to a husband and wife and their heirs vests them with an estate by entirety, and upon the death of the husband such land remains the absolute property of the wife surviving him, and is not subject to be devised by the will of such husband, and upon the death of the wife, intestate, such land descends to her heirs.

3. ———: Deed to: Consideration: Presumption. Where a deed conveying lands is made to a husband and wife and their heirs, and the consideration therefor is paid by the husband, a presumption exists that the payment was intended by the husband as a gift to the wife and in order to overcome this presumption and establish a trust in such lands for the husband or his heirs, the evidence must be so clear, strong, unequivocal, definite and positive as to leave no room for doubt.

4. **TENANTS IN COMMON**: Tax Sale: Contribution. Where real estate of tenants in common is about to be sold for taxes and one of the tenants in common offers to sell his interest to the others and they decline to buy it, and thereupon such tenant abandons the property as worthless and another tenant makes an arrangement with a third party to buy in such property at the tax sale for the benefit of all the tenants in common, without the knowledge or consent of the tenant who had abandoned the property and who disclaimed any interest in it under such arrangement, such latter

tenant cannot be required to contribute to reimburse the purchaser at such sale for his expenditures.

5. **PARTITION**: Accounting: Sole Owners. Where suit is brought by the heirs of a decedent, children by a first wife, against the children and heirs of such decedent and his second wife, to establish a trust in certain lands and for an accounting for rents and profits therefrom and for partition and sale thereof and the defendants claim to be sole owners of such lands as heirs of their mother, who took said lands on the death of her husband as tenant by entirety, and such claim is found by the Supreme Court to be good, the decree of the trial court is erroneous in finding against such claim and in ordering an accounting and in finding that the lands cannot be partitioned in kind and in ordering a sale thereof for the purpose of partition, and is accordingly reversed and the cause remanded with directions.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene*, Judge.

REVERSED AND REMANDED (*with directions*).

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.*, for appellants.

(1) The deeds conveying the nine parcels of real estate in question to John Wimbush and Jane M. Wimbush, his wife, created estates by the entirety therein in them. Jane Wimbush, being the survivor, retained the entire estate therein and the will of John Wimbush did not operate on that estate. R. S. 1919, sec. 2273; Ashbaugh v. Ashbaugh, 273 Mo. 353; Brewing Co. v. Saxey, 273 Mo. 159; Frost v. Frost, 200 Mo. 474; Bank v. Fry, 168 Mo. 492; Hall v. Stephens, 65 Mo. 670. (2) The title to the nine parcels of real estate in question having been taken by John Wimbush and Jane M. Wimbush, as tenants by the entirety, no trust results in favor of the plaintiffs against Jane M. Wimbush and her heirs as to the title, even though the court may find that the entire purchase money was paid by John Wimbush, the presumption being that the payment was intended by John Wimbush as a gift. While this presumption is rebuttable,

there is no evidence in the case at bar to rebut it. Wilhite v. Wilhite, 224 S. W. 448; Bender v. Bender, 220 S. W. 929; Viers v. Viers, 175 Mo. 453; Curd v. Brown, 148 Mo. 92. (3) The trial court had no power to appoint a referee to take any account between the parties without first giving the parties the right to agree upon the referee to be appointed. R. S. 1919, sec. 1427; State ex rel. Webster v. Johnson, 132 Mo. 105. (4) The finding of the trial court that partition in kind of the property in question cannot be made without great prejudice to the rights of the owners on account of the nature and amount of the property sought to be divided and the number of owners is not supported by the evidence, and is, therefore, erroneous, and the order to sell the same and appointing a special commissioner to make such sale is also erroneous. R. S. 1919, sec. 2047; Carson v. Hecke, 222 S. W. 850.

*F. W. Imsiepen, Geo. F. Osiek* and *Geo. O. Durham* for respondents.

ELDER, J.—This is an action by which plaintiffs seek to establish a resulting trust in favor of John Wimbush, their father, who died May 28, 1910, in ten parcels of real estate situated in the city of St. Louis and in certain notes, accounts, books and money alleged to have been the property of said Wimbush at the time of his death. Plaintiffs are the children of John Wimbush by Julia Wimbush, his first wife, and defendants are the children of said Wimbush by Jane M. Wimbush, his second wife.

The amended petition, comprising 59 pages of the record, is unduly prolix. It sets forth the relationship of the parties and then in a desultory manner alleges substantially that John Wimbush died possessed of an estate of the reasonable value of $40,000, consisting of real,

Pleadings.    personal and mixed property situated in the city of St. Louis and in the State of Illinois, all of which is described in detail; that said John Wim-

bush left a last will and testament, dated October 5, 1899, which was admitted to probate in the Probate Court of the City of St. Louis on June 29, 1910, the same being as follows:

"I, John Wimbush, of the city of St. Louis and State of Missouri, and being of sound mind and disposing memory do make, declare and publish this my last will and testament as follows:

"1.   To my wife, Jane M. Wimbush, I give, devise, and bequeath all my property, estate and effects, real, personal or mixed, of whatsoever kind, character or description and wheresoever situated.

"2.   I appoint my said wife, Jane M. Wimbush, my sole executrix herein and direct that as such she give no bond.

"3.   I direct as such trustee the said wife, Jane M. Wimbush, while not remarried give no bond for said trust estate of said minors born of marriage.

"4.   I invest my said executrix, Jane M. Wimbush, as such and without bond with full and absolute power, discretion, capacity, authority and power to sell, grant, convey and deliver in such manner, on such terms and at such prices as said executrix may elect, all or any part of my estate, real or personal or mixed, and to make perfect record title thereto and create perfect ownership thereof, all absolutely and forever the same as I could do if living, and to collect and reinvest the proceeds thereof or any insurance thereon for the benefit of herself and said children named hereafter: Frank A. Wimbush, John J. Wimbush, Maude K. Linberg, Thomas Wimbush, being children of my former wife, Julia A. Wimbush, who died July 29, A. D. 1886; also children of my present wife and executrix of this my will (Jane M. Wimbush), Fanny J. Wimbush and Nelson R. Wimbush. With the exception of an allowance of two hundred dollars ($200) which I bequeath to each of my children named hereafter to be paid within two years after my death by my said wife and executrix, Jane M. Wimbush: Frank A. Wimbush, John J. Wimbush, Maude K. Linberg, Thomas

Wimbush, Fanny J. Wimbush and Nelson R. Wimbush, The balance of my estate to be handled as above stated by my wife and executrix, Jane M. Wimbush.

"I hereby nominate my said wife, Jane M. Wimbush, the executrix of this my last will and testament, and I hereby request that she be not required to give bond for the faithful discharge of the trust thereby reposed in her as such executrix."

The petition then alleges that Jane M. Wimbush duly qualified in the Probate Court of the City of St. Louis as executrix and trustee of the said will; that the same was duly admitted to probate in the Circuit Court of Marion County, Illinois, in chancery sitting, and was construed by said court; that Jane M. Wimbush duly qualified as executrix and trustee of the Illinois trust estate, administered thereon, paid to plaintiffs the legacies due them and rendered her final accounting to the aforesaid Circuit Court of Marion County, which accounting was approved; that by the terms of said will plaintiffs and defendants and Jane M. Wimbush each became "vested in fee simple with a one-seventh interest in the rents and profits and in the proceeds which might be derived from any sale by said trustee of all the property located in the States of Missouri and Illinois so bequeathed in trust to said Jane M. Wimbush, subject to the payment of $200 to each of the plaintiffs and defendants Wimbush herein;" that said Jane M. Wimbush "took possession of said Missouri properties and effects and collected the rents and profits thereof," and, on December 30, 1912, filed her final settlement as executrix "without having rendered any accounting of the rents and profits which had come to her out of said Missouri trust properties in the course of her administration, and without having made any report of the proceedings had in said Illinois court of equity, whereby said will of John Wimbush was construed and said Illinois trust estate distributed and said Illinois trust determined;" that on March 14, 1916, Jane M. Wimbush died intestate, "leaving undischarged her duties as trustee so far as plaintiffs'

four-sevenths interests in said Missouri trust estate and properties were concerned,'' and seized of the possessory right and title as trustee of said properties; that by the death of said Jane M. Wimbush the title to said Missouri trust estate ''became vested and is now vested in this court as a court of general equity, with jurisdiction to administer on said estate and to dispose thereof and to determine said trust in accordance with said last will as construed and adjudicated by the Circuit Court of Marion County, Illinois.''

The petition then proceeds to set forth in somewhat redundant detail the pleadings and proceedings in the Circuit Court of Marion County, Illinois, for the probate and construction of the will of John Wimbush, and in the subsequent appeal taken from the judgment of said Circuit Court to the Supreme Court of Illinois.

Further proceeding, it alleges that the decree of the Circuit Court of Marion County aforesaid, upon appeal to the Supreme Court of Illinois, was affirmed; that thereafter plaintiffs filed a bill of complaint in the Circuit Court of Marion County, Illinois, praying for the termination of the Illinois trust estate and the distribution of the properties thereof; that pursuant to agreement of the parties the court, in said action, rendered a decree divesting Jane M. Wimbush of her title as trustee, adjudging that ''the seven testamentary legatees were seized in fee simple as tenants in common of said Illinois trust estate properties and effects,'' and decreeing that plaintiffs and defendants herein and Jane M. Wimbush were each ''seized and possessed in fee simple of an undivided one-seventh interest in said Illinois properties, real and personal;'' that pursuant to order of the court commissioners were appointed and the said properties partitioned and divided among the parties in accordance with their interests as found by the court.

The petition further alleges that at the time of his death John Wimbush ''was the sole and absolute owner in possession and control, and maintained a certain extensive interstate real estate, trading and general con-

292 Mo.—38.

tracting business, of which said Missouri and Illinois properties constituted the ambulatory trading assets, and which said business he had established about the year 1885, with valuable real and personal property of which he was seized and possessed in fee simple as trading capital, during the life of his first wife, Julia A. Wimbush who died on the 29th day of July, 1886, in said city of St. Louis, and which said trading capital he had increased in value and holdings at the time when he made his said will in the year 1899, by innumerable trades and purchases of real and personal property, and by innumerable building and improvement transactions in the State of Missouri;'' that from and after about October, 1891, the said John Wimbush made the mistake of ''indiscriminately and interchangeably'' causing to be placed in the muniments of title to the properties acquired by him any one of the four several names of John Wimbush, John or Jane M. Wimbush, John Wimbush and Jane M. Wimbush, or John Wimbush and Jane M. Wimbush, his wife, and that had he not been ''misled by ignorance of the law touching the legal effect and result of such error upon the several Missouri and Illinois trusts, each one of which he intended to be executed by said Jane M. Wimbush, his second wife,'' he would not have committed said mistake.

The petition also alleges that pending the attainment by defendant Nelson R. Wimbush, son of Jane M. Wimbush, of his legal majority, it was agreed between plaintiffs and said Jane M. Wimbush that in consideration of plaintiffs allowing Jane M. Wimbush and her children to continue unmolested in the possession, use and enjoyment of the Missouri trust estate during the remainder of her natural life, she, the said Jane M. Wimbush, was to make a will by which she would divest herself of said property and devise the same to plaintiffs and defendants in equal shares, one sixth to each; that relying upon such agreement plaintiffs permitted said Jane M. Wimbush, until the time of her death, to remain in possession of said property in Missouri, without any

accounting to plaintiffs for their four-sevenths interest in the rents and profits thereof; that on March 12, 1916, two days before the death of said Jane M. Wimbush, plaintiffs Frank A. Wimbush and Thomas A. Wimbush, at the request of Jane M. Wimbush, visited her and were informed by her that she was at the point of death and that she had made her last will and had devised said property in accordance with said agreement; that after the death of said Jane M. Wimbush plaintiffs made demand of defendants Fannie Danford and Nelson R. Wimbush for the production of the will of Jane M. Wimbush but were told by said defendants that they had been unable to discover any such will; that subsequently administration was had upon the estate of said Jane M. Wimbush in the Probate Court of the City of St. Louis and final settlement thereof made and approved on July 2, 1917, leaving unimpaired plaintiffs' fee simple right and title to the real estate situated in the city of St. Louis and to four-sevenths of the rents and profits of the said Missouri trust estate.

The petition finally alleges that on October 9, 1917, defendant Edward Kammerer became purchaser at sheriff's sale under a judgment affecting one of the parcels of real estate described (called the Mardell Avenue property); that plaintiffs provided the purchase price of $135 therefor, and that said Kammerer had executed a declaration of trust reciting that he had acquired the said real estate for the common use and benefit of the parties hereto. It then charges that defendants Danford and Wimbush are seized and possessed as trustees *ex maleficio* of plaintiffs' four-sevenths share of the Missouri trust properties, together with the rents and profits collected therefrom and the books of account and muniments of title relating thereto, and closes with the prayer that defendant Kammerer be divested of his trust title to the parcel of real estate purchased by him and that the same be recharged with a trust under the will of John Wimbush; that defendants Danford and Wimbush be compelled to make answer describing the muniments of title

under which they claim and the books and papers relating to the Missouri trust estate which came to them; that the muniments of title found to be in a state or condition of error be rectified; that the Missouri real and personal property be partitioned and the trust relating thereto be terminated; and that each of the plaintiffs be awarded a one-seventh share in all real and personal property of which John Wimbush is found to have been seized and possessed in Missouri, together with the rents and profits which have accrued since his death, under a proper accounting to be made by defendants Danford and Wimbush.

The answer of defendants Danford and Wimbush puts in issue all the allegations of the amended petition and pleads further, as a bar to plaintiffs' claim, the administration had in the Probate Court of the City of St. Louis upon the estates of John Wimbush and Jane M. Wimbush, respectively, and the approval of the final settlements filed in connection therewith. It then denies that plaintiffs have any interest in or to the property described in the petition, alleges that the whole title thereto is vested in said defendants, and prays the court to determine that plaintiffs have not title to or interest in any of the real property described in the petition and to enjoin them from asserting any right, title or interest therein.

The reply of plaintiffs denies generally the affirmative matter pleaded in the answer. The answer of defendant Kammerer admits that he "holds title to the real estate as in plaintiffs' petition stated as trustee for the parties in said declaration of trust."

The court, among other things, found that the conveyance to John Wimbush and his wife Jane M. Wimbush of the real estate held in their joint names was not intended to create in said Jane Wimbush any beneficial interest except a child's share with all the children of John Wimbush, but that she held title thereto for the use of John Wimbush during his lifetime; that upon the death

**Decree.** of said John Wimbush and the probating of his will, Jane M. Wimbush became seized in trust for herself and the six children of John Wimbush, in the proportions of an undivided one-seventh interest each, of the title to each of the ten parcels of real estate described in the petition; that the legacies mentioned in the will of John Wimbush and the debts allowed against his estate had been fully paid and the said estate finally settled and closed; that upon the death of Jane M. Wimbush defendants Danford and Wimbush each became seized of the equitable fee simple title to an undivided three-fourteenths interest and plaitiffs each became seized of the equitable fee simple title to an undivided one-seventh interest in and to the said ten parcels of real estate; that after the death of John Wimbush, Jane M. Wimbush was in possession of and collected the rents and profits from the said real estate; and that upon the death of Jane M. Wimbush, defendants Danford and Wimbush, without any legal authority, jointly and severally took possession of the said real estate, except the Mardell Avenue property, and collected the rents and profits therefrom. Pursuant to its findings the court rendered a decree divesting defendant Kammerer of all right and title to the Mardell Avenue property and ordered the same sold; adjudged defendants Danford and Wimbush to be trustees *de facto* of the nine remaining parcels of real estate and ordered an accounting by them of the rents and profits collected therefrom; appointed a referee to inquire into and receive such accounting, to determine the reasonable value of the use and occupation of such parts of said property as were occupied by said defendants in person, and to make a report thereon; ordered the said referee to take an account of the costs, fees and expenses incurred by plaintiffs in redeeming and protecting the title to the Mardell Avenue property, and to charge three-fourteenths of the amount so ascertained to each of the defendants Danford and Wimbush; ordered that, as partition in kind cannot be made without great prejudice, the real estate described in the petition be sold by a special

commissioner appointed in the decree and a report of sale rendered by such commissioner; adjudged the costs of the action against defendants Danford and Wimbush, and reserved jurisdiction to determine further questions presented. From this judgment and decree defendants Danford and Wimbush have appealed.

All of the evidence offered at the trial was introduced on behalf of plaintiffs. Records of the Probate Court of the City of St. Louis relating to the administration of the estates of both John Wimbush and Jane M. Wimbush were introduced and admitted showing proof of notice to creditors, the filing of an inventory, the filing and approval of a final settlement and the discharge of the executrix and administrator in each estate. The inventory in the estate of John Wimbush shows

Facts.
household furniture appraised at $156.65, cash $597.02, stocks $50, accounts $201.29, notes and interest earned $1520.54, and one tract of real estate in the City of St. Louis fronting on Mardell Avenue, being parcel one mentioned in the petition. It also makes reference to certain notes and bank deposits, fully described, which the executrix, Jane M. Wimbush, states were owned by her and the deceased as tenants by the entirety, and which are claimed by her as her individual property, The final settlement, filed and approved December 30, 1912, shows a balance of sundry notes aggregating $747.78, which was retained by Jane M. Wimbush, pursuant to order of court, on account of statutory allowances aggregating $760 made to her. The inventory in the estate of Jane M. Wimbush, in addition to $89.41 in cash and notes aggregating $721, shows the remaining nine parcels of real estate described in the petition. The final settlement, filed and approved July 6, 1917, shows a balance on hand of $622.46 which was ordered distributed to defendants Danford and Wimbush.

As to the Mardell Avenue property, which was acquired by John Wimbush in his individual name, files of the Circuit Court of the City of St. Louis were introduced showing a suit for special taxes brought by one John F.

McMahon against Jane M. Wimbush and others, under which a special judgment for $29.30 and costs was rendered on February 2, 1915, an execution thereon was issued on August 30, 1917, and a sale under such execution was made by the sheriff to defendant Edward Kammerer on September 27, 1917. The defendants Danford and Wimbush disclaimed any interest in this property.

Warranty deeds executed by diverse grantors at different times between February 28, 1896, and January 20, 1910, each conveying one of the nine other parcels of real estate situated in the city of St. Louis, and described in the petition, were submitted in evidence. The grantees in each of these deeds are "John Wimbush and Jane M. Wimbush, his wife" or "John Wimbush and Jane Wimbush, his wife." The consideration named therein varies from $1 to $3200, and the same in each case is recited as having been paid by "the parties of the second part." There is no evidence as to the immediate facts and circumstances attending the execution and delivery of these deeds, nor is there any direct evidence that the entire consideration was paid by John Wimbush. William F. Smith, attorney, who had for from twelve to twenty years represented John Wimbush during his lifetime and who represented Jane M. Wimbush, executrix of the will of said Wimbush, in connection with her administration of the estate, testified that he saw the deeds to the Missouri property left by the deceased "all of which were tenancy by the entirety deeds."

"Q. You saw those deeds that you say were all vested estates by the entirety; is that right? A. Well, there was one lot here in the city that you spoke of a while ago as the Mardell Avenue lot. I think that was in the name of John Wimbush."

Upon cross-examination the witness was asked,

"Q. Did he (referring to John Wimbush) ever discuss with you the question of tenancy by the entirety in real estate in Missouri? A. Well, the truth is that I suggested that tenancy by the entirety business to him myself, and he acted on my suggestion and followed it up

and kept on taking titles by tenancy by entirety in this State up to the time of his death.''

Referring to the bank deposits claimed by Jane M. Wimbush as her individual property, which were carried in the name of ''John or Jane M. Wimbush,'' the witness testified in part as follows:

''Q. Mr. Smith, what facts, what physical facts, what evidentiary facts did you have to support your advice to Mrs. Jane M. Wimbush that, as a matter of law, those three Missouri bank deposit accounts belonged to her alone? A. I simply predicated it upon the state of the accounts as they were kept in the bank books and shown by the bank books which she had.

''Q. In other words you were governed exclusively by the name on the face of the passbooks, is that right? A. Well, there was one other element that entered into it. Mrs. Wimbush told me that she and her husband had been running their business in a haphazard kind of way and had been mingling their bank funds, and that a part of the money that went into the money that constituted this fund in the American Trust Company was her money and a part of it was his money, and that they had run the account together and put the account in such a shape that the survivor would take the fund in the event of the death of either. I recollect of her stating something to that effect.'' The witness further testified that John Wimbush ''was an illiterate man, so far as keeping books was concerned;'' that it was his recollection that Wimbush kept only one book ''in a crude form,'' it being a ''sort of a ledger or day book.''

M. P. Murray, attorney, testified that he had been employed to ascertain for plaintiffs what property in Missouri John Wimbush had died possessed of, and that he found the property ''was held here by deeds in the entirety.''

Bernard J. O'Reilly, real estate agent, testified that he had had quite a number of transactions with John Wimbush, who was engaged in the business of ''building and speculating and trading in real estate,'' relating to

sales, trades and loans affecting property in the city of St. Louis; that the said Wimbush had "talked to me about making a will several times the year before his death;" that "we discussed the matter and he gave me the idea that he wanted to convey the property or make the will to create a trust for the children;" that "he said he thought that was about the only way that they would— that the property could be preserved," but that he did not speak of any specific property.

Samuel H. Morton, real estate agent, stated that he had known John Wimbush beginning with the year 1886; that he had sold him "real estate in Illinois and Missouri and also sold real estate in Missouri and Illinois for him;" that he "was in my office nearly every day or every week;" that for about eighteen years he "very seldom ever made a sale or a purchase without coming and talking the matter over with me;" that "I loaned him lots of money on his property in St. Louis and collected the rents for him and looked after his property for a number of years;" that he had drawn many deeds and contracts for Wimbush and that "almost invariably" Wimbush put the title to property in the names of himself and his wife, Jane M. Wimbush; that he had known Jane M. Wimbush "ever since I was eight or ten years old," and that "I didn't know her to have any estate outside of what interest she might have in her father's farm."

Several witnesses testified as to having done brick work, excavating, carpenter work, painting, plumbing, and having furnished lumber in connection with houses built by John Wimbush, that Wimbush had always individually paid the bills therefor, and that Jane M. Wimbush in no way participated in making such payments.

Defendant Fannie Danford testified that her mother, Jane M. Wimbush, had inherited a third of the farm left by the latter's father and had received "housekeeper's wages" at the rate of $15 per month from the time she was eighteen years of age until she was married at the age of thirty-five; that, "my mother often went with my

father before they bought a piece of property or before it was traded. She knew what they were trading, and if they were going to buy a piece of property they would look at it."

"Q. You say 'they' would buy it. Do you know whether they agreed jointly to buy these various properties? Why do you say 'they'? A. Because they always bought it together and had it made in both of their names. They were husband and wife; that is all I can tell.

"Q. It was their custom to buy property together and make the deeds in their names all the time? A. Yes, sir.

"Q. Did you ever discuss with her the question as to what she was going to do with this St. Louis real estate? A. What she was going to do with it?

"Q. Yes. A. Why, she always told me she was not going to make a will.

"Q. Did she give any reason for that? A. She said the properties was in her name and we were her heirs and we would get it.

"Q. Did she ever talk to you about these other plaintiffs here claiming any interest in the property and making her trouble? A. Yes, sir; she did.

"Q. What did she say about that? A. Why, she said that if ever they fight us after her death, for us to fight it to the finish, just as she did in Illinois.

"Q. Did she ever say to fight it to the finish because her money bought and paid for it, or because your father put it in his and her name? A. She said it was in their joint names and it was hers.

"Q. That is the only claim she made, was it, because it was put in both their names? A. Yes, sir.

"Q. To your best information, did any of her money go into the purchasing of that property? A. I don't know what she did with her money that she got.

"Q. Did you ever see any books of account of any kind kept by your father around the house? A. No, sir.

"Q. Did he keep any books? A. If he kept them they were all destroyed before my mother's death. There were none in his safe or his desk at the time of my mother's death."

Nelson R. Wimbush, defendant, testified that since March 14, 1916, the date of Jane Wimbush's death, his brother-in-law, Richard L. Danford, had collected the rents from the real estate described in the petition, other than the Mardell Avenue property, and accounted therefor to himself and defendant Fannie Danford.

The foregoing constituted substantially all the relevant oral testimony. Much additional was introduced which was irrelevant and immaterial. On behalf of plaintiffs forty-six documentary exhibits, mostly deeds, were offered and admitted in evidence. Many thereof related to real estate situated in the State of Illinois. Over objection, Section 5, Chapter 30 of Hurd's Revised Statutes of Illinois, declaratory of what shall constitute estates in joint tenancy in the State of Illinois, was admitted in evidence, likewise the record in the two suits brought by plaintiffs in Marion County, Illinois, to construe the will of John Wimbush and to terminate the trust created by the said will and partition the real estate owned by him in Illinois. In the suit to construe the will of John Wimbush the finding of the court was that "It was the intention of said John Wimbush, and he did by and in his said will devise all his property, estate and effects, real and personal, etc., to Jane M. Wimbush, in trust, with the power to sell, grant and convey the same, and that the proceeds derived from the sale of the property devised to the said Jane M. Wimbush, for the purpose aforesaid, and with the power to sell, pass under the will, share and share alike, to the said Jane M. Wimbush, and the complainants and defendants, including the said Jane M. Wimbush, with the exception of $200 (two hundred dollars), to each of his children as devised in and by said will."

In the suit to terminate the trust and partition the real estate the findings of the court were in part that

"John Wimbush died seized in fee simple and possessed as tenant in common with the defendant Jane M. Wimbush, each owning one-half of the following described real estate situate in the State of Illinois (describing same);" that the legacies bequeathed by the will of John Wimbush had been paid in full; that by quit claim deed dated November 16, 1912, Jane M. Wimbush had conveyed to said plaintiffs and to Fannie J. Danford and Nelson R. Wimbush "all right, title and interest in and to all the real property held by her as such trustee that is located in the State of Illinois;" and that "the report of the said Jane M. Wimbush as such trustee under the said will and in accordance with the terms of the decree of the Circuit Court of Marion County, Illinois, filed by her in this court heretofore on the 24th day of April, A. D. 1912, is true and correct and should be approved and confirmed." The court in said suit decreed that "Jane M. Wimbush, in her own individual right, is the owner of eight-fourteenths and the said Frank Wimbush, John H. Wimbush, Thomas A. Wimbush and Maude K. Linberg, and Fannie J. Danford ad Nelson R. Wimbush are each the owners of the undivided one-fourteenth of the following described tracts of land," (being land in Illinois.) and that Jane M. Wimbush "personally and not in her trust capacity" is the owner of all "articles of personal property, notes and moneys so heretofore held by her as trustee" except a certain note for $150. Said decree specifically provides that the disposition made of personal property "does not affect the rights or interests of any of the parties to this suit to any property or to any interest or claim of interest in and to any property of the said parties in the State of Missouri or elsewhere outside of the State of Illinois."

The record discloses no evidence that any mistake was made John Wimbush in taking title to the various parcels of real estate in the names of himself and wife or that he was misled or was ignorant of the legal effect of such conveyances. The record is also silent with respect to any evidence proving or tending to prove the allega-

tion in the petition that Jane M. Wimbush had agreed with plaintiffs, prior to her death, to make a will in their favor; is silent with respect to any evidence that partition in kind could not be made of the nine parcels of real estate involved, if so decreed by the court, and with respect to whether or not Jane M. Wimbush received, as trustee under the will of John Wimbush, any personal property other than that accounted for by her in the suit brought in Marion County, Illinois, to terminate the trust and bring about partition.

Counsel for respondents have not favored us with a brief upon the merits of the appeal taken. They have, however, filed a brief "in support of motion to dismiss appeal for failure to file corrected abstract." Upon the same day as the last mentioned brief was filed, respondents filed a "supplementary abstract." Having failed to stand upon their motion to dismiss, and having supplied what they deemed essential parts of the record alleged to have been omitted, we rule that the point made has been waived. Being without printed suggestions in opposition to the points raised by appellants in their brief, we have, nevertheless, made a diligent examination of the record and authorities in search of anything contradictory thereof.

I. Appellants contend that the court erred in decreeing that Jane M. Wimbush held title to all the real estate described in the petition and situated in the city of St. Louis (excepting the Mardell Avenue property), in trust for John Wimbush, and that plaintiffs each own an undivided one-seventh interest in the same and are entitled to partition thereof. In support of this contention appellants argue that the deeds conveying the nine parcels of real estate in question to John Wimbush and Jane M. Wimbush, his wife, created an estate by the entirety in such real estate; that Jane Wimbush, being the survivor, retained the entire estate; and that the will of John Wimbush did not

Estate by Entirety.

operate on that estate. If this insistence be sustained, it will, in the main, be decisive of this case.

The character of estate known as an estate by the entirety has long been firmly intrenched in the law of this State. As early as Gibson v. Zimmerman, 12 Mo. 385, and Garner v. Jones, 52 Mo. 68, the common-law doctrine, that a conveyance in fee of real estate to a husband and wife created a tenancy by the entirety, was accepted and adopted with judicial approval. In Hall v. Stephens, 65 Mo. 670, Bains v. Bullock, 129 Mo. 117, and Bank v. Fry, 168 Mo. 492, the estate was further recognized. With the adoption of the common-law doctrine, there was necessarily adopted the attributes of the estate, viz: That neither the husband or wife was seized of moieties, but of entireties, each being the owner of the entire estate; that if either died, the estate continued in the survivor; and that upon the death of both, the heirs of the last surviving would take to the exclusion of the heirs of the first deceased. [Tiedeman on Real Property (3 Ed.), sec. 181.] In Wilson v. Frost, 186 Mo. l. c. 319, VALLIANT, J., in speaking of this estate, said: "In an estate of the entirety, the husband and the wife during their joint lives each owns, not a part, or a separate or a separable interest, but the whole and, therefore, the death of one leaves the other still holding the whole title as before, with no one to share it." In Frost v. Frost, 200 Mo. l. c. 481, it was said: "Neither the husband nor the wife in an estate of entirety can so destroy the character of the estate as to prevent the survivor becoming the sole owner." And as recent as Ashbaugh v. Ashbaugh, 273 Mo. l. c. 357, this court has said: "An estate by the entirety is created by a conveyance to the husband and wife by a deed in the usual form. It is one estate vested in two individuals who are by a fiction of law treated as one person, each being vested with the entire estate. Neither can dispose of it or any part of it without the concurrence of the other, and in case of the death of either the other retains the estate."

Reviewing the facts in the instant case, we find that by warranty deeds, regular in form, divers grantors conveyed to "John Wimbush and Jane M. Wimbush, his wife," the nine particular parcels of real estate, other than the Mardell Avenue property, described in plaintiffs' petition; that the granting clause in each deed was "grant, bargain and sell, convey and confirm unto the said parties of the second part, their heirs and assigns;" that the consideration in each case is recited as having been paid "by the said parties of the second part;" and that all of said deeds, with one exception, antedated the will made by John Wimbush. We further find, according to the testimony of Mr. Smith, who been John Wimbush's attorney, that he had suggested to Wimbush the "tenancy by the entirety business," and that Wimbush had acted on the suggestion and "followed it up and kept on taking titles by tenancy by entirety in this State up to the time of his death." We find this practice corroborated by Mr. Morton, confidential adviser of Wimbush, who testified that "almost invariably" Wimbush "put the title in their names," (meaning the name of Wimbush and wife), and by Mrs. Danford, who testified that they (meaning Wimbush and wife) "always bought it together and had it made in both of their names." We find the record barren of any evidence that any mistake was made by Wimbush in taking title in the names of himself and wife, or that he was in any way misled or was ignorant of the legal effect of such conveyances, as charged in the petition. To the contrary it would be fair to indulge the presumption that he was fully advised by and acted upon the advice of his attorney. We find that John Wimbush predeceased his wife; that subsequently Jane M. Wimbush, the wife, died, leaving defendants Fannie Danford and Nelson R. Wimbush as her heirs at law; that administration was duly had upon the estates of both John Wimbush and Jane M. Wimbush; that in the estate of Jane M. Wimbush the real estate in question was properly inventoried; that notice to creditors was duly given in both estates and all debts of the deceased were paid; that final

settlements in each estate were made and approved and the executrix and administrator were respectively discharged.

Accordingly, applying the principles enunciated in the cases above mentioned, we are of the opinion, and so hold, that the deeds by which the nine parcels of real estate in the city of St. Louis, exclusive of the Mardell Avenue property, were acquired, constituted John Wimbush and Jane M. Wimbush tenants by the entirety; that upon the death of John Wimbush the said real estate, as a whole, became the absolute property of Jane M. Wimbush, and that upon her death the same descended to her heirs, defendants Fannie Danford and Nelson R. Wimbush, free from the operation of the will of John Wimbush. And, even though it be contended that the entire consideration expressed in the said deeds was paid by John Wimbush, and for that reason a trust should result in favor of plaintiffs against Jane M. Wimbush and her heirs, such contention cannot be sustained for the reason that the presumption exists that the payment was intended by John Wimbush as a gift to his wife. [Wilhite v. Wilhite, 224 S. W. (Mo.) 448; Bender v. Bender, 220 S. W. (Mo.) 929; Viers v. Viers, 175 Mo. 444; Curd v. Brown, 148 Mo. 82.] While this presumption is rebuttable, and may be overcome by parol testimony, in order that that may be done the evidence in rebuttal must be clear, strong, unequivocal and so definite and positive as to leave no room for doubt. [Viers v. Viers, 175 Mo. 444; Curd v. Brown, 148 Mo. l. c. 92; Modrell v. Riddle, 82 Mo. 31.] In the case at bar the record discloses no evidence whatever in rebuttal of such presumption.

II. A further assignment of error commanding our attention is that the court erred in decreeing that **Mardell Avenue Property.** defendants Fannie Danford and Nelson R. Wimbush are liable for a proportionate part of the expenditures of the plaintiffs in protecting the title to the Mardell Avenue property.

With respect to said property Nelson R. Wimbush testified as follows:

"Q.   About this Mardell Avenue property, the suit for taxes was begun during your mother's lifetime? A. Yes, sir.

"Q.   Now at the time was that property regarded as being of any great value? A. No, sir.

"Q.   Between you and your mother and your sister and your half-brothers and sisters? A. No; my mother didn't regard it as worth anything. She give them a chance to buy it at that time if they wanted it, and they didn't want it.

"Q.   That is, you mean your mother offered to sell the property? A. To any one of us.

"Q.   To your half-brothers or sisters? A. Or any of us.

"Q.   And they didn't want to buy it? A. No. sir.

"Q.   Now, you say you first found that Mr. Kammerer had bought the property through the papers in this case? A. Some papers that come to me in this case.

"Q.   That is the time this amended petition was filed in which Mr. Kammerer was joined as a party? A. Yes.

"Q.   That is the first time you knew him, was it? A. Yes.

"Q.   Did you ever have any conversation with Mr. Kammerer about his buying this property for you or your sister? A. None.

"Q.   Never talked to him about it at all? A. No, sir.

"Q.   Do you know whether your sister did? A. Never heard of any.

"Q.   You didn't have any arrangement with Mr. Kammerer by which he was to buy the property in, did you? A. No, sir.

"Q.   And your sister, Mrs. Danford, didn't either, did she? A. No, sir.

"Q.   And neither you nor she claim any interest in that property? A. No, sir."

Fannie Danford testified as follows:

"Q. Now, this Mardell Avenue property, the suit for the tax bill was brought in your mother's lifetime? A. Yes, sir.

"Q. Was it before or after the suit that there was some conference between the various members of the family as to whether the property should be protected from the taxes or not? A. It was after we received a notice that the property in Lindenwood was going to be sold for taxes my mother told my husband and I if we would like to buy it to go out and look at it and see what we would give. It was out in the county, and we offered them one hundred dollars, but they didn't want to take one hundred dollars, and we let it go.

"Q. Did your mother make any offer to your half-brothers and sister? A. She said she was going to tell them they could buy it if they wanted it, but we couldn't give any more, my husband and I.

"Q. And that deal didn't go through? A. It never went through.

"Q. And at that time was the property abandoned by you and your brother and your mother? A. What is the question?

"Q. I say, at that time, after this deal didn't go through—A. Why, my mother said, 'Let it be sold for taxes;' she didn't want it.

"Q. Now, when did you first know that Mr. Kammerer had bought the property? A. When we got notice of that suit and the papers showed that he was a defendant with us.

"Q. When the petition was amended so as to join him as a party defendant? A. Yes, sir.

"Q. Did you ever have any conversation with him about buying the property for you? A. No, sir.

"Q. Or give him any directions to buy it for you? A. No, sir.

"Q. You don't claim any interest in that property? A. No, sir."

The declaration of trust executed by Edward Kammerer under date of October 9, 1917, sets forth that the

purchase price of $135 paid the sheriff was provided by Frank Wimbush "for the benefit and to save said property for partition among the heirs of John Wimbush, deceased, in accordance with a certain trust described in a certain petition for partition in a suit pending in the Circuit Court in the City of St. Louis, etc.'' (being the instant suit); that ''I hold said title subject to the orders and decrees made by said court in said pending suit. In the event that said court shall make final disposal of said cause by an order or judgment duly made and entered, without having disposed of said land as prayed for in said suit or otherwise, then and thereupon I will convey said land to said Frank Wimbush, trustent, and his assigns as his or their interests may appear under his contract with the law firm of Imsiepen & Osiek, now prosecuting said partition suit.''

At the close of the whole case, by leave of court, the answer of defendants, praying the court to determine that plaintiffs had no interest in the real estate described in the petition, was amended so as to exclude the Mardell Avenue property.

Under the evidence above set forth, showing no participation whatever by defendants Danford and Wimbush in the purchase of said property by defendant Kammerer, and showing an express disclaimer by said defendants of any interest therein, it was clearly erroneous for the court to find that they had an interest and adjudge them liable for a proportionate part of the expense incurred in protecting the title to same.

III. Appellants finally urge that the court erred in decreeing: (a) That defendants Danford and Wimbush are liable to account to plaintiffs for the rents and profits of the real estate described in the petition, other than the Mardell Avenue property, from March 14, 1916, and in appointing a referee to take such account; (b) In finding that partition in kind of all the real estate described in the petition cannot be made, in ordering a sale thereof, and in appointing a Special Commissioner to make such

sale; (c) In failing to find that defendants Danford and Wimbush are the sole owners of the title to all **Decree Erroneous.** the said real estate except the Mardell Avenue property and that plaintiffs have no right, title or interest therein, and in failing to enjoin plaintiffs from asserting any right, title, or interest in said real estate, as prayed in the cross-bill of said defendants. In view of our holding that upon the death of Jane M. Wimbush the legal title to the real estate in question, other than the Mardell Avenue property, devolved upon defendants Danford and Wimbush, free from the operation of the will of John Wimbush, and in further view of the affirmative relief prayed for in the answer of said defendants, it is clearly apparent, without further comment, that the trial court erred as claimed.

IV. For the reasons appearing herein, the judgment of the circuit court is reversed and the cause remanded to that court with directions to dismiss plaintiffs' bill at their costs, to enter judgment for appellants Fannie Danford and Nelson R. Wimbush to the effect that they are the sole owners of parcels two to ten inclusive, of the real estate described in plaintiffs' amended petition, situated in the city of St. Louis, that plaintiffs have no right, title or interest therein, and enjoining them from asserting any such right, title or interest, and to the further effect that plaintiffs are the sole owners of the Mardell Avenue property. All concur.