# Richmond.

COMMONWEALTH v. ARTHUR H. FLEET'S EXECUTOR.

March 21, 1929.

The opinion states the case.

*W. W. Martin, Henry R. Miller, Jr.,* and *C. H. Morrissett,* for the Commonwealth.

*Shewmake & Gary*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of the city of Richmond in the matter of the application of Marshall & Illsley Bank, Executor of Arthur H. Fleet, for relief from erroneous assessment of taxes.

Arthur H. Fleet, a resident of Milwaukee, Wisconsin, died in the city of Lynchburg, Virginia, on October 30, 1925, leaving a last will and testament which was executed in the city of Milwaukee. At the time of his death, Fleet was visiting relatives in Lynchburg, seeking restoration to health from the effects of a serious surgical operation. For the purpose of collecting interest on some bonds, notes and other securities, Fleet moved them from his safety deposit box in the vault of the Marshall & Illsley Bank, in Milwaukee, to a lock box in the safety deposit vault of the Lynchburg National Bank at Lynchburg, Virginia.

The Auditor of Public Accounts of Virginia, having been informed of the presence within this State of the securities, on March 18, 1926, did, under the provisions of section 44½ of the Tax Bill of Virginia (Laws 1903, chapter 148, as added by Laws 1922, chapter 460), determine and assess upon and against all of the property of the decedent, located within Virginia, a tax of two per cent. upon the value thereof, which amounted to one thousand one hundred and forty-two dollars and twenty-two cents ($1,142.22), refusing to permit the transfer of the securities and other personal property to the executor in Milwaukee until the tax was paid.

On March 30, 1926, the executor, under protest, paid to the Auditor of Public Accounts the sum of $1,142.22, denying the validity of the assessment made by the Auditor of Public Accounts. On March 17, 1927, the executor filed his application in the Circuit Court of the city of Richmond, praying relief from the alleged erroneous assessment, and on March 17, 1928, filed an amended and supplemental application, praying to be relieved of the assessment made by the Auditor of Public Accounts, and for an order directing the refund of the tax paid, alleging that the imposition of the tax was repugnant to and contravened Article IV, section 2, of the United States Constitution, which reads as follows:

"The citizens of each State shall be entitled to all privileges and immunities of citizens in the several states."

The executor further alleged that it contravened and was repugnant to Article I, section 10, which prohibits a State from passing any law impairing the obligation of contracts; also that it contravened and was repugnant to section 1 of Article XIV, Amendments to the Constitution of the United States, which provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall State deprive any person of life, liberty or property without due process of law."

The transfer of property at death belonging to resident decedents is taxable under section 44 of the Tax Bill (As amended and re-enacted by Laws 1924, chapter 305). Under this section the tax is graduated. However, deductions for deaths, administration expenses, compensation for legal representatives and the Federal Estate Tax are allowed in determining the taxable property of resident decedents.

Section 44½ of the Tax Bill is as follows: "All personal property within the jurisdiction of the State and any interest therein, belonging to persons whose domicile is without the State, shall, upon the death of the owner, be subject to a tax of two per centum of its actual value, for the support of the State government, upon its transfer, payment or delivery to the executor, administrator, or trustee, of the estate of said deceased. * *"

No exemptions whatever are allowed under this section; there is no classification of the estate of a non-resident decedent, but the entire estate is taxed at a flat rate of two per centum of its actual value.

■■ The question presented for determination is constitutionality of section 44½ of the Tax Bill. The State, unhampered by constitutional restrictions, has the power to impose a transfer tax upon the transfer, payment, of delivery or property, real or personal, located in the State, though the property is owned by a non-resident of the State. The right to transmit property is not a fundamental right of the citizen but is a right conferred upon him by legislative enactment, which enactment must be within the scope of constitutional powers. The State may regulate and control the devolution of property, even to the extent of repealing the laws relating to wills, descents and distributions, and declare that upon the death of a party his property shall be applied to the payment of debts, and the residue appropriated for the use of the public. *Eyre* v. *Jacob*, 14 Gratt. (55 Va.) 422, 73 Am. Dec. 367. But, in exercising this control, the State must respect the provisions of the Federal Constitution which is the supreme law of the land.

■ That the tax imposed by section 44½ of the

Tax Bill is a privilege tax is a closed question in this State.

Construing this statute in *Commonwealth* v. *Huntington*, 148 Va. 120, 138 S. E. 657, Mr. Chief Justice Prentis said: "The tax here involved being a transfer tax, is in its nature a privilege tax as distinguished from a tax upon property. Such a tax can be fairly justified only in consideration of some privilege accorded by the State, and if there is no such privilege accorded, the State can impose no such tax." *Frick* v. *Pennsylvania*, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316; *Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69, 46 S. Ct. 256, 70 L. Ed. 475, 43 A. L. R. 1374.

In view of the conclusion we have reached, it is only necessary to consider Article IV, section 2, of the Constitution of the United States. Article IV of the Constitution does not define the phrase "privileges and immunities," and the majority of the courts have hesitated to proclaim any hard and fast definition which would be applicable to all cases. However, the general definition which has been most often quoted is that given by Mr. Justice Washington in *Corfield* v. *Coryell*, Fed. Cas. No. 3230, 4 Wash. C. C. 371, 380. The definition is too lengthy to set out in full, but the language pertinent to the present inquiry is: "* * * to take, hold and dispose of property, either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the State; may be mentioned as some of the particular privileges and immunities of citizens, which are clearly embraced by the general description of privileges deemed to be fundamental."

Inasmuch as that case only involved the right of a non-resident to take oysters from the waters of the

State of New Jersey, no question of taxation was in-
volved. While never expressly approved, that dictum,
however, has been several times quoted and relied
upon in decisions of the United States Supreme Court,
notably in the cases of *Paul* v. *Virginia*, 8 Wall. 168,
19 L. Ed. 357; *Ward* v. *Maryland*, 12 Wall. 430, 20 L.
Ed. 449; *Slaughter House Cases*, 16 Wall. 37, 21 L. Ed.
394.

In *Canadian Northern Ry. Co.* v. *Eggen*, 252 U. S.
553, 40 S. Ct. 402, 64 L. Ed. 713, Mr. Justice Clark
said: "This court has never attempted to formulate a
comprehensive list of the rights included within the
'privileges and immunities' clause of the Constitution
(Article 4, section 2), but it has repeatedly approved
as authoritative the statement by Mr. Justice Washing-
ton in 1825, in *Corfield* v. *Coryell*, Fed. Cas. No. 3,320,
4 Wash. C. C. 371, 380 (the first Federal case in which
this clause was considered), saying:

" 'We feel no hesitation in confining these expressions
to those privileges and immunities which are, in their
nature, fundamental.' " (Cases cited.)

It is argued by counsel for the State that the ex-
emptions from higher taxes extend only to commercial
privileges. We do not concur in this interpretation.
The opinion was delivered in 1825; it was an effort to
anticipate the future enumeration of fundamental
privileges. That which was dictum in its inception,
through the failure of the courts to place the stamp of
their disapproval upon it, has become entitled to great
consideration.

In the *Slaughter-House Cases*, 16 Wall. 77, it is said:
"The constitutional provision there alluded to (Article
IV, section 2), did not create those rights which it
called privileges and immunities of citizens of the
States. * * * Its sole purpose was to declare to

the several States that, whatever those rights, as you grant or establish them to your own citizens, or as you limit or qualify, or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other States within your jurisdiction.''

A comparison of sections 44 and 44½ demonstrates a discrimination in favor of the resident property owner. Under section 44, property devised or bequeathed to charitable, philanthropic and educational organizations within the State is exempt from taxation. No such exemption is provided for in the case of a nonresident. Deductions for debts, funeral and administration expenses are allowed in residents' estates—no deductions in the case of non-residents' estates.

Under section 44 (Laws 1924, chapter 305), beneficiaries are divided into three classes: (Class A). Husband and wife, lineal ancestors or lineal descendants of decedent. To these an exemption of $10,000.00 is allowed. (Class B). Brother, sister, nephew or niece of the decedent. To these an exemption of $4,000.00 is allowed. To all persons an exemption of $1,000.00 is allowed. Under section 44, the tax rate varies according to the relationship of the beneficiary to the decedent. Under section 44½, estates of non-residents are taxed at a flat rate of two per centum, regardless of the value of the estate. An alternative estate tax is provided in case of residents, so that the tax paid shall be at least eighty per cent. of the tax payable under the Internal Revenue Act. Section 44½ fails to provide for an estate tax on the estates of non-residents.

While it is true that in the case of larger estates the tax is less on the estate of a non-resident than it would be on the estate of a resident owning property of similar value, this does not relieve the statute of its

discriminatory results. Absolute equality of taxation is unattainable, if we seek to devise a system of taxation under which a citizen would be benefited in proportion to the amount of taxes paid by him. The courts have always realized this difficulty, and therefore have endeavored to apportion as equally as possible the burdens of taxation.

The length a State may go in its effort to discriminate between a resident and non-resident citizen in levying taxes has been determined by the Supreme Court of the United States.

In *Travis* v. *Yale and Towne Mfg. Co.*, 252 U. S. 60, 40 S. Ct. 228, 64 L. Ed. 460, the court declared unconstitutional the provisions of a New York State income tax law, which provided for an income tax on non-residents based on their net income derived from sources within the State of New York at the same rates as the tax imposed upon residents of the State, because the law allowed certain personal exemptions to residents which were not allowed to non-residents. Mr. Justice Pitney, delivering the opinion of the court, said, at page 79 (40 S. Ct. 232): "The nature and effect of the crucial discrimination in the present case are manifest. Section 362, in the case of residents, exempts from taxation $1,000.00 of the income of a single person, $2,000.00 in the case of a married person and $200.00 additional for each dependent. A non-resident tax-payer has no similar exemption  *  *  *. (Page 80) [40 S. Ct. 232]: Under the circumstances as disclosed, we are unable to find adequate ground for the discrimination and are constrained to hold that it is an unwarranted denial to the citizens of Connecticut and New Jersey of the privileges and immunities enjoyed by citizens of New York."

In *Smith* v. *Loughman*, 245 N. Y. 486, 157

N. E. 753, which is the most recent case on the question involved, the New York non-resident transfer tax was held unconstitutional by a unanimous court. Both the New York and the Virginia laws are practically verbatim copies of the New Hampshire law, which is generally known as the "Matthews Flat Rate Plan." Cardozo, C. J., delivered the opinion of the court, and, quoting from *Chalker* v. *Birmingham & N. W. Ry. Co.*, 249 U. S. 522, 526, 39 S. Ct. 366, 367 (63 L. Ed. 748), said: "The power of a State to make reasonable and natural classifications for purposes of taxation is clear and not questioned; but neither under form of classification nor otherwise can any State enforce taxing laws which in their practical operation materially abridge or impair the equality of commercial privileges secured by the Federal Constitution to citizens of the several States." Mr. Chief Justice Cardozo continues: "Classification may be supported by many considerations of expediency or fairness and, none the less, may be illegal if it denies to the citizens of any State the privileges and immunities that belong to citizens of another. To put it differently, equality in such circumstances is itself the highest policy, to which other policies must bow. The Constitution so commands. Few of its commands, if any, have had an influence more profound upon the attainment and preservation of the unity of the nation. (*Paul* v. *Virginia*, 8 Wall. (U. S.) 168, 180 [19 L. Ed. 357]; *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60, 78 [40 S. Ct. 228, 64 L. Ed. 460]; cf. *Hanover Fire Ins. Co.* v. *Carr* [272 U. S. 494], 47 S. Ct. 179 [71 L. Ed. 372, 49 A. L. R. 713]). * * * A set of rules believed to be intolerable for residents has been established against others. Courts will be slow to say that all this can be done without other discrimination than is benignant and beneficient. * * *

"The principle of equal treatment for the citizens of all the States is a good more precious than the gain of revenue in one year or another. We are not to whittle it down by refinement of exception or by the implication of a reciprocal advantage that is merely trivial or specious. The principle is put in jeopardy—there is set in it an entering wedge that may be the beginning of its destruction—if this statute is upheld."

The opinion was handed down on July 20, 1927, and on November 21, 1927, the Supreme Court of the United States denied a petition for a writ of certiorari.

That section 44½ of the Tax Bill was of doubtful legality is evidenced by the action of the legislature in amending the Tax Bill at the 1928 session (Acts 1928, chapter 45). The amendment places non-residents and residents on the same basis and accords to both classes the same treatment in applying rates of taxation.

For reasons stated, we are of opinion that section 44½ of the Tax Bill is repugnant to and contravenes the Constitution of the United States.

We are requested by counsel for the Commonwealth, in the event section 44½ of the Tax Bill is declared unconstitutional, to remand the case with direction to the circuit court to enter an order refunding only so much of the taxes paid as exceeds the amount of taxes that would have been assessed had the assessment been made under the provisions of section 120 of the Tax Code of 1928. At the time the instant case was decided, sub-sections 14 and 15 of section 120 of the Tax Code of 1928 were not in effect; consequently, the question of refund on the basis provided for therein was not considered by the lower court.

The constitutionality of section 120, Tax Code, is called in question by defendant in error. The

constitutionality of this section may depend upon a question of fact, viz: whether the estate involved has vested in interest or has been distributed. The record is silent upon the question; therefore, the constitutionality of section 120 of the Tax Code is not involved in a decision of the instant case.

*Affirmed.*