**HERNANDEZ, Collector of Internal Revenue, v. BECKER.**

**No. 465.**

Circuit Court of Appeals, Tenth Circuit, Dec. 7, 1931.

Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Hugh B. Woodward, U. S. Atty., and Dudley Cornell, Asst. U. S. Atty., both of Albuquerque, N. M., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellant.

R. H. Hanna and Fred E. Wilson, both of Albuquerque, N. M., for appellee.

Louis C. Ilfeld, of Las Vegas, N. M., filed brief as amicus curiæ.

Before COTTERAL and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

PHILLIPS, Circuit Judge.

John Becker brought this suit to recover a federal estate tax paid under protest on the estate of Anna Becker. From a judgment in favor of John Becker, the collector has appealed.

The stipulated facts are as follows: John Becker and Anna Becker were married in 1877, and thereafter continuously resided in New Mexico until the death of Anna Becker in December, 1922. John Becker, as executor of her estate, filed under protest a return for federal estate tax purposes on October 26, 1923. The property reported in the return as the gross estate was accumulated by the Beckers after their marriage while residents of New Mexico, and was their community estate. A tax of $3,498.74 was assessed on the transfer of one-half of such property. The tax was paid under protest. On March 22, 1928, John Becker filed a claim for refund of the entire tax. Such claim was rejected April 19, 1928.

The question here presented is whether the wife's interest in the community property, upon the transfer of which the tax was computed and collected, was of such a character as to give rise, upon her death, to a federal estate tax measured by the value of such interest.

The Revenue Act of 1921 (42 Stat. 277, 278) provides in part as follows:

"Sec. 401. That, in lieu of the tax imposed by Title IV of the Revenue Act of 1918, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act. * * *

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;

"(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy; * * *

"(d) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth; * * *

"(f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

In Chase National Bank v. United States, 278 U. S. 327, 334, 49 S. Ct. 126, 127, 73 L. Ed. 405, 63 A. L. R. 388, the court said:

"The statute in terms taxes transfers. Like provisions in earlier acts have been generally upheld as imposing a tax on the privilege of transferring the property of a decedent at death, measured by the value of the interest transferred or which ceases at death. Cf. Y. M. C. A. v. Davis, 264 U. S. 47, 50, 44 S. Ct. 291, 68 L. Ed. 558; Edwards v. Slocum, 264 U. S. 61, 62, 44 S. Ct. 293, 68 L. Ed. 564; New York Trust Co. v. Eisner, 256 U. S. 345, 349, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660; Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081."

But in Tyler et al., Adm'rs, v. United States, 281 U. S. 497, 50 S. Ct. 356, 358, 74 L. Ed. 991, 69 A. L. R. 758, the court gave section 402 (d), supra, a broad construction and held that a technical transfer of an estate from the decedent to the beneficiary was not essential with respect to estates by the entirety. In that case the court said:

"1. The contention that, by including in the gross estate the value of property held by husband and wife as tenants by the entirety, the tax pro tanto becomes a direct tax—that is, a tax on property—and therefore invalid without apportionment, proceeds upon the ground that no right in such property is transferred by death, but the survivor retains only what he already had. Section 201 imposes the tax 'upon the trans-

fer of the net estate'; and if that section stood alone, the inclusion of such property in the gross estate of the decedent probably could not be justified by the terms of the statute. But section 202 definitely includes the property and brings it within the reach of the words imposing the tax. * * * A tax laid upon the happening of an event, as distinguished from its tangible fruits, is an indirect tax which Congress, in respect of some events not necessary now to be described more definitely, undoubtedly may impose. If the event is death and the result which is made the occasion of the tax is the bringing into being or the enlargement of property rights, and Congress chooses to treat the tax imposed upon that result as a death duty, even though, strictly, in the absence of an expression of the legislative will, it might not thus be denominated, there is nothing in the Constitution which stands in the way.

"The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights.

"According to the amiable fiction of the common law, adhered to in Pennsylvania and Maryland, husband and wife are but one person, and the point made is that, by the death of one party to this unit, no interest in property held by them as tenants by the entirety passes to the other. * * *

"Taxation, as it many times has been said, is eminently practical, and a practical mind, considering results, would have some difficulty in accepting the conclusion that the death of one of the tenants in each of these cases did not have the effect of passing to the survivor substantial rights, in respect of the property, theretofore never enjoyed by such survivor. Before the death of the husband (to take the Tyler Case, No. 428) the wife had the right to possess and use the whole property, but so also had her husband; she could not dispose of the property except with her husband's concurrence; her rights were hedged about at all points by the equal rights of her husband. At his death, however, and because of it, she, for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. Thus the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other. These circumstances, together with the fact, the existence of which the statute requires, that no part of the property originally had belonged to the wife, are sufficient, in our opinion, to make valid the inclusion of the property in the gross estate which forms the primary base for the measurement of the tax. And in that view the resulting tax attributable to such property is plainly indirect."

Again in construing section 402 (f), supra, in Chase National Bank v. United States, supra, the court held that a technical passing of the proceeds of insurance policies from the decedent to the beneficiaries was not essential, and in the opinion said:

"Obviously, the word 'transfer' in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another."

In determining the character of the interests of John and Anna Becker in such community estate, the statutes and rules of decision in New Mexico, where the property is located, are controlling. Allen v. Henggeler (C. C. A. 8) 32 F.(2d) 69, 70; United States v. Robbins, 269 U. S. 315, 326, 46 S. Ct. 148, 70 L. Ed. 285; Talcott v. United States (C. C. A. 9) 23 F.(2d) 897, 899.

A statutory system of community property in New Mexico has obtained continuously since 1852 (see Act of Jan. 12, 1852, Rev. St. Ter. N. Mex. 1855, pp. 494–496; Comp. Laws N. Mex. 1884, §§ 1407–1411), with the possible exception of the period between February 24, 1887, and February 26, 1889, when rights analogous to dower and curtesy were provided by statute (see chapter 32, N. Mex. Laws 1887 and repeal

thereof by chapter 90, N. Mex. Laws 1889; Beals v. Ares, 25 N. M. 459, 483, 185 P. 780). Chapter 90, N. Mex. Laws 1889, re-established the community system. Beals v. Ares, supra.

Prior to January 7, 1876, the civil law obtained in New Mexico. See section 2, chap. 2, N. Mex. Laws 1875–76, and Beals v. Ares, supra.

It follows that the common-law rights of dower and curtesy have never obtained in New Mexico as to the interests of the wife and the husband, respectively, in the community estate.

Under such statutes the wife's interest in the community property during coverture is quite different from her right of dower at common law. Beals v. Ares, 25 N. M. 459, 490, 185 P. 780. Likewise the husband's interest in the community property under such statutes is quite different from the right of curtesy at common law.

Chapter 37, N. Mex. Laws 1907, in part provides:

"Sec. 7. *May be Joint Tenants, Etc.*—A husband and wife may hold property as joint tenants, tenants in common, or as community property." (68-301. See note.)

"Sec. 8. *Separate Property of the Wife.* —All property of the wife owned by her before marriage and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof is her separate property. The wife may without the consent of her husband convey her separate property." (68-302.)

"Sec. 9. *Separate Property of the Husband.*—All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof is his separate property." (68-303.)

"Sec. 10. *Community Property.*—Conveyances by Married Women.—Limitations. —All other property acquired after marriage by either husband or wife, or both, is community property." (68-401.)

"Sec. 17. *Courtesy and Dower Not Allowed.*—No estate is allowed the husband as tenant by courtesy upon the death of his wife; nor is any estate in dower alloted to the wife upon the death of her husband." (68-308.)

"Sec. 26. *Distribution of the Common Property on Death of Wife.*—Upon the death of the wife, the entire community property, without administration, belongs to the surviving husband, except such portion thereof as may have been set apart to her by a judicial decree, for her support and maintenance, which portion is subject to her testamentary disposition, and in the absence of such disposition, goes to her descendants, or heirs, exclusive of her husband." (38-104.)

"Sec. 27. *Distribution of Common Property on Death of Husband.*—Upon the death of the husband one-half of the community property goes to the surviving wife and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition goes one fourth to the surviving wife and the remainder in equal shares to the children of the decedent and further as provided by law. In the case of the dissolution of the community by the death of the husband the entire community property is equally subject to his debts, the family allowance and the charge and expenses of administration." (38-105.)

"Sec. 28. *Further Succession to Property.*—Subject to the provisions of Sections 26 and 27 of this act, when any person having title to any estate, not otherwise limited by marriage contract, dies without disposing of the estate by will, it is succeeded to and must be distributed subject to the payment of his debts in the following manner: One-fourth thereof to the surviving husband or wife and the remainder in equal shares to the children of decedent and further, as now provided by law." (38-106.)

NOTE.—Section number in N. Mex. Code 1929.

It will be noted that by section 26, supra (section 38-104), the Legislature has plainly provided that, while the death of the wife shall dissolve the community relation, it shall not result in a division or disturbance of the property in the community estate. On the other hand, by section 27, supra (section 38-105), it has provided with equal clearness that on the death of the husband the community estate shall be broken up and one half of the property shall pass or descend to the wife and the other half in accordance with the will of the husband, or, in the event of his intestacy, according to the statute of descent.

Prior to 1901 in New Mexico a wife's interest in the community property was held to be a mere expectancy. Barnett v. Barnett, 9 N. M. 205, 50 P. 337. Later the Supreme Court in Arnett v. Reade, 220 U. S. 311, 31 S. Ct. 425, 426, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040, reviewing

Reade v. Lea, 14 N. M. 449, 95 P. 131, said:

"However this may be, it is very plain that the wife has a greater interest than the mere possibility of an expectant heir."

That case did not go so far as to say that the wife's interest in the community property was a vested interest. However, that question was definitely decided in Baca v. Village of Belen, 30 N. M. 541, 240 P. 803, 804, where the court said:

"In this state we have the community property system taken from the civil law, under which a wife's interest in property is quite different from the majority of the states in the Union, which have patterned their statutes after the common law, in which the wife has only a dower right in the property acquired by the husband after marriage. In such property she has no present vested interest, but only an expectancy. Here however, she has a present, existing, vested interest, equal in all respects to the interest of the husband."

The court recognized that the wife had a vested interest in the community property, but it did not fully determine the character of such interest.

In Re Chavez's Estate, 34 N. M. 258, 280 P. 241, 242, 69 A. L. R. 769, the court was called upon to determine whether the wife's interest in the community estate, which on the death of the wife "belongs to the surviving husband," is within the purview of section 2, chap. 179, N. Mex. Laws 1921, which in part reads as follows:

"All estates which shall pass by will or inheritance or by other statutes * * * shall be liable to, and there is hereby imposed thereon, a tax of one per centum of its value."

The court approved its former holding in Baca v. Village of Belen, supra, and said:

"It is evident that the title to community property is a different and distinct thing from either tenancy in common or joint tenancy. What are the incidents or attributes of the community title? We must look to the statute for our answer, instead of to the common law, as we might in cases of either of the other two classes of tenancy, both of which are known to the common law. Community property is, however, a concept foreign to the English common-law system, and with us is a creature of statute.

"Certain peculiarities incident to community property are mentioned in the statute. It is optional with the spouses to take otherwise than as tenants of the community estate. Where the wife's name is inserted as grantee or one of the grantees in the conveyance of real estate, the presumption is against the intention to create community property thereby, as it is apparently not favored as to the wife, and yet the opposite is true as to the husband. Again, the wife is denied testamentary power of disposition of her interest in the community property, while the husband is possessed of the power to control by will the disposition of one-half thereof but is powerless to affect the wife's interest where she survives him. The husband, if he survives the wife, is not required to administer upon the community estate, the entire corpus of which belongs to him without administration, and yet the wife must submit to administration upon the community estate if she survives the husband. The husband is the manager of the community property, with control as complete as he has over his separate estate (except for certain restrictions in conveyancing and as to testamentary power over the one-half part thereof), and yet where he becomes incompetent, under section 29 of the act (Code 1915, § 2767), provision is made to substitute the wife as head of the community in his place.

"Community estate is a marital estate, incapable of existing except between husband and wife during coverture. Upon divorce, the spouses become substantially tenants in common; upon death of either, the estate terminates and a separate estate results, always subject to community debts and charges. * * *

"When the Legislature enacted this statute it was, and still is, the general rule and course of society for the husband to manage the business affairs and property of the community, and for the wife to make and keep the home of the family. The husband generally incurs the debts of the community and must either pay them, or the creditors of the community may subject its assets to their claims. The death of one spouse brings a different train of immediate consequences to the common property from that effected by the death of the other. In either case, the community is dissolved. But where the husband dies, the business must be liquidated, community debts must be paid, and distribution must be made pursuant to the terms of the husband's will, if he leaves one, and otherwise according to law. Administration is absolutely necessary to effect these results. On the other hand, where the wife dies, while

the family life is shattered there is no necessity to liquidate the business of the community for the reason that the community assets and the management thereof remain intact, the community debts continue, and the assets and debts become separate estate and separate debts of the husband. Unless to distribute an interest to the wife's heirs, administration would be futile. The statute, therefore, provides in the inception of the community estate for the ceasing of the wife's interest on her death. No other course would be logical unless the lawmakers desired to add to the sorrows of a bereaved husband the further burden of the enforced liquidating of his business affairs upon the death of his wife.

"As the Legislature has recognized the estate known as joint tenancy, wherein as an incident there is the vesting of the entire estate in the survivor, not by inheritance but by virtue of the creation of the estate, so it has created another and different class of tenancy known as community property, wherein this right of survivorship inures as to the entire estate in the husband, if he survives, but only as to the half if the wife survives. * * * The death of Elizabeth Chavez resulted, as to her interest in the community property, in no 'inheritance' by appellee. * * * Holding, as we do, that there was no estate of the wife which survived her death, none could be taxable."

We first inquire whether the interest in the community estate which belonged to Anna Becker at the time of her death falls within the specific provisions of section 402, supra. To be included in the gross estate as defined by section 402 (a), supra, the property must be (1) an interest of the decedent at the time of his death, (2) subject to the payment of expenses of administration and charges against his estate, and (3) subject to distribution as a part of his estate. These three requirements are to be read conjunctively. Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156; United States v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461; Schuette v. Bowers (C. C. A. 2) 40 F.(2d) 208, 210; Allen v. Henggeler, supra.

By virtue of the state statute, the wife's interest in the community estate ceases and it belongs to the husband without administration. It is not subject to expenses of administration and charges against her estate, and is not subject to distribution as a part of her estate. The property here involved therefore did not fall within section 402 (a), supra.

Such property did not fall within section 402 (b), supra, because the common law rights of dower and curtesy have never obtained in New Mexico, and section 26, supra, did not create an estate in lieu of curtesy.

Is the community estate an interest held jointly or by the entirety within the meaning of section 402 (d), supra? The Supreme Court construed the words "held jointly" to mean a joint tenancy, in Reinecke v. Northern Trust Co., 278 U. S. 339, 348, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397.

█ A joint tenancy arises where two or more persons have any subject of property jointly in which there is a unity of interest, unity of title, unity of time, and unity of possession. 2 Bl. Com. 180. "Unity of interest" means that the interests must accrue by one and the same conveyance; "unity of time" that they must commence at one and the same time; and "unity of possession" that the tenants must hold the same undivided possession of the whole and enjoy the same rights until the death of one. Staples v. Berry, 110 Me. 32, 85 A. 303, 304; Bassler v. Rewodlinski, 130 Wis. 26, 109 N. W. 1032, 7 L. R. A. (N. S.) 701; Fleming v. Fleming, 194 Iowa, 71, 174 N. W. 946, 950, 180 N. W. 206, 184 N. W. 296; Liese v. Hentze, 326 Ill. 633, 158 N. E. 428, 429.

█ The chief incident of such an estate is the right of survivorship by virtue of which, upon the death of one joint tenant, his interest does not pass to his heirs or representatives, but the entire tenancy remains to the surviving cotenants, and the last surviving tenant takes the whole. 2 Bl. Com. 183, 184; City of Louisville v. Coleburne, 108 Ky. 420, 56 S. W. 681, 682; Farr v. Trustees of Grand Lodge, A. O. U. W., 83 Wis. 446, 53 N. W. 738, 18 L. R. A. 249, 35 Am. St. Rep. 73. The survivor does not take the moiety of the other tenant from him or as his successor, but takes it under and by virtue of the conveyance or instrument by which the joint tenancy was created. Carter v. English (C. C. A. 9) 15 F.(2d) 6; Smith v. Douglas County (C. C. A. 8) 254 F. 244; In re Gurnsey's Estate, 177 Cal. 211, 170 P. 402; Fleming v. Fleming, supra; 33 C. J. p. 904.

█ An estate by the entirety is one held by husband and wife by virtue of a title

acquired by them jointly after marriage. According to the fiction of the common law, they are regarded as one person and hence they do not take in parts or shares like joint tenants or tenants in common, but each takes the whole, or, in the ancient phrase, they are seized not *per my et per tout*, but *per tout* only. On the death of the husband or the wife the survivor has the whole estate, but such survivor takes no new title or estate for he or she has the whole from its inception. Stuckey v. Keefe's Executors, 26 Pa. 397; Alles v. Lyon, 216 Pa. 604, 66 A. 81, 82, 10 L. R. A. (N. S.) 463, 116 Am. St. Rep. 791, 9 Ann. Cas. 137; Ketchum v. Walsworth, 5 Wis. 95, 102, 68 Am. Dec. 49; Maitlen v. Barley, 174 Ind. 620, 92 N. E. 738; Green v. Cannady, 77 S. C. 193, 57 S. E. 832, 834; Klorfine v. Cole, 121 Or. 76, 252 P. 708, 254 P. 200; In re Kearns (C. C. A. 4) 8 F.(2d) 437, 438; Fay v. Smiley, 201 Iowa, 1290, 207 N. W. 369, 371; Wimbush v. Danford, 292 Mo. 588, 238 S. W. 460, 466; Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S. W. 72, 73.

Under a joint tenancy the survivor succeeds to his cotenant's moiety by right of survivorship flowing from the original grant. Under an estate by the entirety the whole estate continues in the survivor. Ashbaugh v. Ashbaugh, supra.

Under chapter 37, supra, as construed in Re Chavez's Estate, supra, no estate of the wife survives her death. On her death the entire community estate belongs to her husband. On the other hand, on the death of the husband, one half of the community estate goes to the wife, the other half is subject to the testamentary disposition of the husband, and, in the absence of such disposition, goes one-fourth to the surviving wife and the remainder in equal shares to the children of the decedent, and further as provided by the statute of descent of New Mexico. It will be noted the statute provides that on the death of the wife the entire community estate *belongs* to the husband, while on the death of the husband one half of the community *goes* to the surviving wife and the other half *goes* in accordance with the husband's will, or, in the absence of such will, under the statute of descent. The interests of the two spouses are not equal, because on the death of the wife her interest ceases, while on the death of the husband one half of the community descends to the wife and the other half is subject to testamentary disposition of the husband. The very same statute that provides for this community estate also provides for joint tenancy. It is quite apparent that the community estate is neither a joint tenancy nor an estate by the entirety. Therefore it does not fall within the provisions of section 402 (d), supra.

There is another reason why the community estate here involved and the accessions to the property rights of the husband therein, arising on the death of the wife and because thereof, are not within the purview of section 402 (d), supra. The community relation was created long prior to the enactment of the Revenue Act of 1921. Counsel for the collector assert that the property was acquired by the Beckers prior to 1907. The accessions to the property rights of the husband on the death of the wife came as a result of the title he acquired when the property became a part of the community estate. It was not a new acquisition or a new title. If such community estate was a joint estate within the meaning of section 402 (d), supra, it was one created by virtue of the acquisition of the property by the Beckers during the existence of the marriage relation. If it was a joint estate, it was one created before November 23, 1921, the effective date of the Revenue Act of 1921 (see 42 Stat. 321) and before September 9, 1916, the effective date of the Revenue Act of 1916 (see 39 Stat. 801), the latter being the first of the Revenue Acts to contain such provision as to joint estates. Once property is acquired by a husband and a wife as a part of their community estate, there is no power in the wife, without the husband's consent, to deprive the husband of his interest therein, including his rights as surviving spouse. Hence this case does not fall within the principle applied to the two trusts over which the settler reserved the power of revocation in Reinecke v. Northern Trust Co., 278 U. S. 339, 345, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397; and to the insurance proceeds under policies over which the insured reserved the power to change the beneficiary in Chase National Bank v. United States, 278 U. S. 327, 334–337, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388. The Revenue Act of 1921 did not contain a provision making section 402 (d), supra, retroactive, as did subsequent Revenue Acts. See section 302 (h), Revenue Act 1924 (43 Stat. 305 [26 USCA § 1094 note]); section 302 (h), Revenue Act 1926 (44 Stat. 70, 71 [26 USCA § 1094]). And section 402 (d), supra, does not apply to joint estates created before the enactment of the Revenue Act of 1921. Carter v. English (C. C. A. 9) 15 F.(2d)

6; Knox v. McElligott, 258 U. S. 546, 42 S. Ct. 396, 66 L. Ed. 760; Lynch v. Congdon (C. C. A. 8) 1 F.(2d) 133; Mastick v. Commissioner, 18 B. T. A. 428.

Finally, the purpose of section 402 (d), supra, is to prevent tax evasion (Phillips v. Dime Trust & Safe Dep. Co., 52 S. Ct. 46, 76 L. Ed. ——, decided November 23, 1931), and it cannot be seriously contended that community estates are created to avoid federal taxation.

■ Was there a transfer of the interest of Anna Becker in the community estate within the meaning of section 401, supra?

We are not unmindful, as stated above, that the Supreme Court has held that a technical transfer of the estate is not necessary if the property falls within the purview of section 402 (d), supra, or section 402 (f), supra. However, it intimated very strongly in Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758, that estates by the entirety would not come within the purview of the general language of section 401, supra, if it stood alone, and are subject to the tax solely because of the specific provisions of section 402 (d), supra. Likewise, the holding in Chase National Bank v. United States, supra, with respect to the proceeds of life insurance policies, is predicated upon the specific language of section 402 (f), supra. Here the interest of the wife in the community estate does not come within the purview of any specific provision of the statute, and no estate passed or was transferred upon the wife's death. On the contrary her interest in the community estate upon her death ceased and terminated, and the whole of the community estate, by virtue of the statute and the conveyance or transfer of the property to the community, belonged to, rather than passed to the husband. At the death of Anna Becker no interest in the community estate held by her passed to her husband. The interest which she held immediately prior to her death was extinguished by that event. May v. Heiner, 281 U. S. 238, 243, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244.

We conclude that no estate was transferred on the death of the wife, either within the meaning of the general language of section 401, supra, or the specific language of sections 402 (a), (b), or (d), supra.

We do not hold that Congress could not impose a tax on the privilege of the passing to the husband of definite and important accessions to his property rights in the whole community estate on the death of the wife, of which her death is the generating source, but we hold that it has not done so.

This construction will not result in any part of the community estate escaping the burden of the tax. On the death of the husband, leaving the wife surviving, the whole community estate is subject to administration, to the payment of charges against his estate and the expenses of its administration, and one half passes to the wife and the other half according to the husband's will or the statute of descent. The whole is therefore subject to distribution as a part of his estate. On the death of the husband, after the death of the wife, the whole community estate which belonged to the husband without administration, of which he dies seized, is subject to administration, subject to charges against his estate and the expenses of its administration, and subject to distribution as a part of his estate either in accordance with his will or of the statute of descent. Therefore, on the death of the husband it is transferred within the meaning of section 401, supra, and falls within the provisions of section 402 (a), supra.

■ Counsel for the collector contend that we must assume, in the absence of proof to the contrary, that the community estate here involved was acquired by the Beckers prior to the adoption of such chapter 37, supra; that therefore the wife had a vested interest in such community estate prior to the enactment of chapter 37, supra, and that the Legislature could not pass any law which would in any wise limit such vested interest. By the sections of such chapter 37, supra, upon which we have predicated our conclusions, the Legislature in no manner undertook to limit or restrict the vested rights of the wife during her life. It merely provided what should happen upon her death. Such sections created a different right of inheritance as to the wife, substituted a right of survivorship for a right of inheritance as to the husband, and changed the powers of testamentary disposition by the husband and wife. (See sections 7, 8, and 9, chap. 62, N. Mex. Laws 1901.) The privilege of receiving property by inheritance is not a natural right, but a creature of the law, and the Legislature of a state, except in as far as it is restricted by constitutional or treaty provisions, has plenary power over the descent and distribution of property within the borders of such state, and at its will and in its discretion may change the existing law, regulate the right of succession and place burdens and restrictions thereon. National

550

Safe Deposit Co. v. Stead, 250 Ill. 584, 95 N. E. 973, 978, Ann. Cas. 1912B, 430; Steinhagen v. Trull, 320 Ill. 382, 151 N. E. 250, 252; Rieger v. Harrington, 102 Or. 603, 203 P. 576, 578; In re Rogers' Estate (Mo. Sup.) 250 S. W. 576, 577; In re Hagar's Estate, 98 Vt. 235, 126 A. 507, 508; Commonwealth v. Fleet's Executor, 152 Va. 353, 147 S. E. 468, 469; Cornett's Executor v. Commonwealth, 127 Va. 640, 105 S. E. 230, 231; In re Emerson's Estate, 191 Iowa, 900, 183 N. W. 327, 329; Wallace v. Myers (C. C.) 38 F. 184, 185, 4 L. R. A. 171; 18 C. J. § 4, p. 806.

In Rieger v. Harrington, supra, the court said:

"The Legislature has the right by statute to declare what interest a husband, during the life and after the death of his wife, shall have in her real estate situate within the state of Oregon. This state is empowered to regulate the tenure of real property within its limits, the modes of its acquisition and transfer, the rules of its descent. * * * *"

In Steinhagen v. Trull, supra, the court said:

"The regulation of the descent of property and of the right to devise property, as well as the method of conveying and the manner of creating estates and the character and quality of estates created, is purely statutory and entirely within the control of the Legislature."

In Re Emerson's Estate, supra, the court said:

"Our state Constitution in its Bill of Rights insures and secures the acquiring, * * * and protecting property as an inalienable right. * * * This guaranty, however, ceases to operate at the death of the possessor. Neither our state nor our federal Constitution secures the right to any one to control or dispose of his property after his death; nor the right to any one, whether of kin or not, to take it by inheritance."

It might be argued with some force that the Legislature could not take from the surviving husband during his lifetime a right or estate given him by the law existing at the time the property is acquired by the community. But chapter 37, supra, enlarges rather than diminishes the right and interest of the husband in the community estate, where he survives the wife.

If the Legislature could provide that the entire community estate should *descend* to the husband on the death of the wife, we fail to see why it could not provide, as it undertook to do, that on the death of the wife the whole estate by virtue of the community relation should *belong* to the husband. The wife's vested rights ceased at her death. The Legislature by section 26, supra, in no wise interfered with her vested rights during her lifetime.

We are of the opinion that such provisions of chapter 37, supra, apply to community estates acquired both before and after the enactment thereof.

The decree is affirmed.